[PHILADELPHIA, APRIL 16, 1835.]

## THOMAS against RIEGEL and Others, Executors of ROTHROCK.

### IN ERROR.

*Debt* on bond against executors. *Plea,* that before suit brought defendants were discharged on settlement of their accounts by decree of the Orphans' Court, unreversed and unappealed from, and so they were not executors at time of suit brought, alleging that they had fully administered. *Replication,* that before their discharge they had delivered up certain goods and bonds of the estate, without consideration and without accounting therefor, alleging a *devastavit,* by means whereof the estate at the time of their discharge was insufficient to pay debts, and that defendants had not fully administered. *Demurrer* to this replication.

Executors who have appropriated the assets of the estate to the payment of legacies instead of the debts of the testator, and upon settling their administration account afterwards in the Orphans' Court, have obtained a discharge from their executorship, remain liable notwithstanding to the creditors for the assets so applied to the payment of the legacies.

ERROR to the Common Pleas of Northampton county.

The action was debt against *Matthias Riegel, Jacob Rothrock,* and *Michael Smith,* executors of *Isaac Rothrock,* deceased, upon a bond of the testator, dated November 27th, 1817, for two hundred and sixty-four dollars. The defendants pleaded a special plea, which in substance amounted to this: that on the 18th of December, 1821, *Riegel* and *Smith* filed an administration account in the register's office of Northampton county, exhibiting a balance due from the estate to them of eighty-nine dollars and seventy-five cents; and that on the 24th of the same month the said *Jacob Rothrock* filed a similar account, exhibiting a balance due to the estate of one dollar and five cents, which accounts were on presentation to the Orphans' Court referred to three auditors, who reported that they found the account of *Riegel* and *Smith* correct in all its items; and that there

(Thomas *v.* Riegel et al.)

was a balance due by *Jacob Rothrock* to the estate of twenty-nine dollars and seventy-nine cents; which report was confirmed by the said court.    That on the 1st of February, 1822, on petition, the said *Matthias Riegel* was discharged by the said court from his executorship, and afterwards on the 19th of April, 1822, the said *Michael Smith* was likewise discharged: that afterwards on the 29th of August, 1823, the court accepted the resignation of the said *Jacob Rothrock,* vacated his letters testamentary, and awarded letters of administration with the will annexed, to *Philip Lynn,* and ordered the said *Jacob Rothrock* to deliver over to him the effects unadministered and to account with him for the estate previously administered, and to pay over the balance: that letters of administration *cum test. annex.* were afterwards granted by the register of wills to the said *Philip Lynn :* that the said *Jacob Rothrock* on the 30th of December, 1823, filed in the register's office a further and final account, exhibiting a balance in his hands of two dollars and sixty-five cents, which being referred to auditors on presentation to the Orphans' Court and found to be correct, was confirmed; and that the said *Jacob Rothrock* had duly accounted with the said *Philip Lynn,* and delivered the unadministered estate over to him according to the decree of the court.

The defendants pleaded, that before the institution of this suit, they had been respectively discharged and dismissed by the Orphans' Court; and that they were not at the time of the institution of this suit and yet are not executors of the last will of *Isaac Rothrock,* but that before the institution of this suit they had respectively fully administered all the estate of the said *Isaac Rothrock* which came to their hands respectively.

To this plea the plaintiff replied in substance that before the defendants or either of them had been discharged, to wit, on the 24th of August, 1819, they had in their possession divers goods, chattels and credits of the decedent, (describing them) and also three bonds, one of *John Rothrock* for one thousand two hundred and eighteen dollars and seventy-five cents, one of *Jacob Rothrock* for one thousand two hundred and eighteen dollars and seventy-five cents, and the third of *Joseph Rothrock* for one thousand two hundred and eighteen dollars and seventy-five cents; and that being so possessed they had afterwards on the 24th of August, 1818, delivered up the goods and chattels above mentioned to *Gertrout Rothrock,* the widow of the deceased, and the bonds above mentioned to the respective obligees, without receiving any consideration therefor and without accounting for the same, alleging a *devastavit* thereof, by means whereof the estate of the said *Isaac Rothrock* in the hands of the said executors at and before the time when they were discharged by the Orphans' Court, was insufficient to pay the debts of the deceased, traversing that defendants had fully administered.

The defendants demurred specially to this replication, and assigned for cause :—

First—That the replication in its commencement professes to answer the whole of the plea, and does not afterwards answer the material allegations of the plea, particularly in this:—

That it does not answer the allegation and averment, that after the defendants took upon themselves the burden of the last will and testament of *Isaac Rothrock*, deceased, they respectively settled and filed their accounts of the execution of the said last will and testament of the said *Isaac Rothrock*, deceased, and of their administration of the estate committed to them: which accounts after presentation to and settlement in the Orphans' Court of Northampton county, were respectively duly confirmed by the said court, and that the decrees of the said court in the premises, remain in full force, unappealed from and unreversed.

Further.   In that it does not answer the allegation and averments that the defendants were respectively before the institution of this suit, discharged and dismissed by the Orphans' Court of Northampton county, from their office and appointment as executors of the last will and testament of the said *Isaac Rothrock*, deceased, which decree of the said court discharging and dismissing them from their office and appointment aforesaid, remains in full force, unappealed from and unreversed, and that they respectively were *not at the time* of the institution of this suit, and at the time of plea pleaded, executors of the last will and testament of the said *Isaac Rothrock*, deceased.

And further.   In that it does not answer the allegation and averment, that on the twenty-second day of November, in the year of our Lord one thousand eight hundred and twenty-three, letters of administration of the unadministered goods, chattels, and credits, of the said *Isaac Rothrock*, deceased, with the will of the said *Isaac Rothrock*, deceased, annexed, were in due form of law, and according to the decree of the said Orphans' Court of Northampton county, made in the premises, and remaining in full force, unappealed from and unreversed, granted by the register, &c. of Northampton county, to *Philip Lynn ;* and that the said *Jacob Rothrock*, afterwards exhibited his further and final account, of the execution of the said last will and testament of *Isaac Rothrock*, deceased, which said further and final account, after presentation to, and re-settlement in the said Orphans' Court, was confirmed by the said court, the decree of which said confirmation by the said court, remains in full force, unappealed from and unreversed ; and that the said *Jacob Rothrock*, afterwards accounted to and with the said *Philip Lynn*, administrator as aforesaid, with the will of the said *Isaac Rothrock*, deceased, annexed, for all and every the goods, chattels, rights, and credits, which had been previously administered by him, the said *Jacob Rothrock*, and did pay over the balance which remained due from him, to the said *Philip Lynn*, as such administrator, and did deliver over, and pay to him, the said *Philip Lynn*, as such administrator,

(Thomas *v.* Riegel et al.)

all and every the goods, and chattels, rights and credits, title deeds, evidences, and securities, which were of the decedent, and which remained in his hands unadministered.

Second—For that the said *Rebecca Thomas,* hath not in and by her said replication, confessed and avoided, or traversed and denied, or attempted to put in issue any matter of fact, alleged by the defendants in their plea, above pleaded, but has introduced and attempted to put in issue matters of fact, not alleged nor necessary to be alleged, and that the replication is no answer to the said plea, but evasive and argumentative, &c.

Third—For that the allegations and averments, in the defendants' plea set forth, and which are therein well pleaded, that the defendants were respectively on the several days and times, in the said plea in that behalf mentioned, and before the institution of this suit, discharged and dismissed by the Orphans' Court of Northampton county, from their office and appointment as executors of the last will and testament of the said *Isaac Rothrock,* deceased, the said court having competent power, and authority, and jurisdiction, so to decree, which decree remains, and is in full force, unappealed from and unreversed, and that they, the said defendants, respectively were not at the time of the institution of this suit, and at the time of plea pleaded, executors of the last will and testament of *Isaac Rothrock,* deceased, but that before the institution of this suit, they had respectively resigned their said offices as executors, and been in due form of law dismissed and discharged therefrom, which said matters are not denied in the said replication of the said *Rebecca Thomas,* are a positive bar to the maintenance of this action.

Fourth—For that the alleged neglect and refusal as set forth in the said replication of the said *Rebecca Thomas,* to account for the whole of the goods, chattels, and credits, alleged to belong to the estate of the said *Isaac Rothrock,* deceased, and the alleged waste and destruction of the same, by the defendants, form no answer to the plea of the defendants, by them above pleaded, setting forth the final confirmation of the accounts of the defendants, as the executors of the last will and testament of *Isaac Rothrock,* deceased, by the Orphans' Court of Northampton county, and the discharge of the defendants from their office and appointment as such executors, and their having accounted for the balance remaining to the administrator *de bonis non;* those matters, having been proper only for the consideration of the Orphans' Court, whose decree in the premises, as in the defendants' plea pleaded, being the decree of a court of competent jurisdiction, existing in full force, unappealed from and unreversed, cannot be inquired into in this court, and in a collateral proceeding, such as is attempted by the plaintiff's replication.

Fifth—For that the said replication, contains matter upon which the said defendants cannot take or offer any certain and sufficient issue.

Sixth—For that the said plaintiff hath not concluded her said replication, by putting herself upon the country, &c.

And for that, the said replication, is in various other respects defective, uncertain, informal and insufficient, &c.

The court below gave judgment for the defendants on the demurrer.

And the error assigned was, that the court erred in entering judgment in favour of the defendants. The judgment on the demurrer should have been in favour of the plaintiff.

*Jones,* for the plaintiff in error, stated the principal question to be, whether executors who have disposed of the assets of the testator, in the payment of legacies, are liable to the suits of creditors, after they have been dismissed from their office, and their accounts settled and confirmed, and the period for an appeal has elapsed, if those assets should be wanted for the payment of debts; and contended that executors although discharged from the future administration of the estate, are chargeable *as executors* in respect of assets, which were in their hands to be administered, and which were administered or wasted.

The plaintiff could not traverse the various averments of the plea cumulatively. He must either confess the whole, and avoid it by new matter, or traverse some averment in it, without which the residue of the matters of the plea would be insufficient. He adopted the latter course. The most material averment of the plea is, that the defendants had fully administered. By traversing this averment, the question is raised, whether the matters of record pleaded, are alone sufficient to discharge the defendants.

The decree dismissing the defendants does not divest them of the character of executors: it only exonerates them from liability 'to complete the execution of their trust. The title of the executor is by the will. A renouncing executor may resume the trust, should it become vacant. 1 *Atk.* 461. *Toll.* 69, 70. Neither of the defendants was *dismissed.* Each *resigned,* which may be called a renunciation with leave of the court. They are executors still for the purpose of being charged in respect to their own time, although they have not power now to go on with the further execution of the trust. It is no objection that they cannot now sue any body. An *executor de son tort* cannot sue, yet he may be sued. 5 *Rep.* 31, *a.* 1 *Saund.* 265, *n.* 2. Nor that there is an administrator *de·bonis non cum test. annex.* If an executor *de son tort* takes out letters of administration, he may nevertheless be sued as executor. *Godolp. O. L.* 94, 95. In *Chandler* v. *Thompson, Hob.* 265, *b.* the question is put, how an executor should be charged, who was executor for a time, and wasted. Nobody doubted that he might be sued. The question is resolved thus: sue the executor generally. If he plead the special matter, and that he delivered over the goods to his successor, (as the

(*Thomas v. Riegel et. al.*)

defendants in the case at the bar have done,) the plaintiff may reply that during his time he wasted the goods to the value of the debt. In *Keble* v. *Osbaston, Hob.* 49, the plaintiff declared on a bill obligatory. The defendant pleaded that the obligee died intestate, and before suit brought, administration was committed to another, who administered and still doth. The plaintiff replied that before administration was granted, goods came to the hands of the defendant, who administered or converted them to his use. Held, the plaintiff might recover. *S. P. Bradbury* v. *Raynal, Cro. Eliz.* 565. *Lawson* v. *Crofts*, 1 *Keble*, 114. 157–8. *Packman's case*, 6 *Co. Rep.* 19. See also, 1 *Serg. & Rawle*, 555, *and* 3 *Rawle*, 361. 370, 371, 379. In *Kendal* v. *Lee*, 2 *Penn. Rep.* 482, the same principle is asserted.

The plaintiff in this case cannot sue the defendants, except in their character of executors, and he cannot charge them for waste, without showing his interest in the assets. Therefore she must sue on the bond and charge them as executors, for they are only chargeable in respect of assets. The waste here consisted in paying legacies before debts. An executor who pays legacies, is always liable in respect of those legacies, notwithstanding his discharge. He may require a refunding bond, or take security in any other form. But these are personal. His successor could not sue upon it in his own name. His commission and security extend only to the assets remaining. 2 *Penn. Rep.* 485. 3 *Rawle*, 370. 372. If an executor pays legacies without security, or with one surety, or on security notoriously bad, how can he be reached, except in an action against him as executor? But if he delivers them upon security according to law, with good faith, he would be protected. But these are considerations personal to him, and could not arise in an action against his successor, and this liability of the executor is indefinite in point of time. As to the nature of the condition of the refunding bond, see act of 21st March, 1772, sec. 4; act 19th April, 1794. The averments therefore, in the plea that defendants had resigned, and an administrator appointed in their place, are not material.

As to the effect of the decrees of the Orphans' Court, on the accounts of the executors—

He argued, that the last account of *Jacob Rothrock*, was an accounting *in pais*, and not protected by any decree, so that it appeared that at least the amount of his bond was now in hand, with the assent of the other defendants; that in regard to the other bonds they passed out of the defendants' hands, under circumstances which the law called *waste;* and that is not protected by a decree of the Orphans' Court. Waste is not administration: nor a proper item in an administration account. If the defendants' argument be sound, what is the use of refunding bonds?

It was improper to introduce the payment of these legacies into the administration account. 15 *Serg. & Rawle*, 60. 2 *Penn. Rep.* 424. Still their having done so, does not alter the rights of the par-

(Thomas *v.* Riegel et al.)

tics. In *Sterrett's Appeal*, 2 *Penn. Rep.* 424, the proper mode of stating the accounts is given. There should be two accounts stated: an administration account, and a distribution account of the balance.

The introduction into an administration account of items, proper only to an account between the executors and legatees, or next of kin cannot bind creditors; and so here the introduction of the legacies into the first account, and the decree of the Orphans' Court cannot have the effect claimed for it. *App* v. *Driesbach*, 2 *Rawle*, 287, is not to the purpose. There the action was brought by the residuary legatee, against the executor who was an heir, and claimed the sum demanded as an advancement. Upon the principle suggested, the distributive account should have been conclusive between the parties in that suit, for it was a contest between legatees. If the decree protects the defendants, what becomes of the refunding bonds? are they a dead letter? If they hold bonds taken in good faith, but the sureties have become insolvent, they should have rejoined the fact instead of demurring. The paying of legacies is not necessarily a tortious act. *Toll. Ex.* 307. Our acts of assembly allow it. The refunding bonds come in lieu of the assets in specie. They may be called contingent assets, or substitute assets, or *assets if wanted*, to pay debts at any time after. On this ground, a legacy *is* not attachable in foreign attachment. *Law of Executors*, 185. 2 *Rawle*, 227. Should it be said the executors have not taken refunding bonds, it may be replied, that it does not appear that they have not. At all events if they have not, it is their fault. As to the alleged formal defects, the replication admits every thing that it does not deny, and a formal admission is not necessary.

The plea ought not to have concluded to the country, because the defendants should have an opportunity to excuse the alleged waste, by rejoining that it consisted in the payment of legacies, and that they took refunding bonds with two sufficient sureties at the time, but who have become insufficient. Besides, on general principles the conclusion is right. It introduces new matter. *Stephen on Pl.* 190, 191. 203. 1 *Saund.* 103, *a. b.   Co. Lit.* 126, *a.   Gould, Pl.* 385, *b.* 388, sec. 23.

*Brooke* and *Porter* for the defendants in error.

The defendants allege that the plaintiff's replication does not answer their plea. We have set forth a settlement and confirmation of the accounts in the Orphans' Court, on a re-settlement by auditors; no part of this is answered, but they say that previously thereto, certain acts occurred, in consequence of which we are liable. Conceding *argumenti causa*, that they have in effect admitted our allegation of having presented our accounts, and been discharged, they have not answered, or put in issue the conclusion, to ˉʰich we have come. Our plea was, that true it is we once were exec⠂ rs, but that having settled our accounts in the manner provided by ⅃ w, and to the satis-

(Thomas *v.* Reigel et al.)

faction of the proper tribunal, we have been discharged, and are therefore not answerable to this plaintiff in this action.    We set forth the circumstances and conclude that so before suit brought, we were dismissed and discharged from our office and appointment as executors, the court having power, &c. and the decree remaining in full force, and that we were not at the institution of the suit, executors.

Under the act of 1819, (*Purdon*, 674,) the decree of the Orphans' Court is conclusive, no appeal having been taken within a year. These acts were pleaded by us, and it is no answer to the plea that previously we had committed a *devastavit.*

A plea must answer all it professes to answer.    If it so professes and afterwards only answer a part, the whole is bad and plaintiffs · may demur.    1 *Chitty,* 509.    The rule as to replications is the same as to pleadings.    An entire replication, bad in part, is bad in the whole. 1 *Chitty,* 617.    The material allegations unanswered, are, 1st. the settlement of the accounts, and the decree of the Orphans' Court confirming them; 2d, the discharge and dismissal of the executors, and that they were not and are not executors; 3d, the grant of administration *de bonis non* to *Philip Lynn* and *Jacob Rothrock,* accounting to him, and his account being confirmed in the Orphans' Court.

The mistake of the opposite side throughout, is in treating our plea as though it was merely *plene administravit.*    This is not our plea. It is, that having fully administered, and our accounts being duly settled and confirmed, we were according to law discharged, and this we offer to verify.    The traverse tendered, therefore, is to the inducement and not to the point offered to be put in issue.    As to the second cause of demurrer : the rule that, when new matter is introduced into the replication, it must be sufficient in substance to destroy the opposite party's allegation, and, that in such case they must conclude with a verification, is confined to cases in which such new matter is a fortification of the declaration, as in cases of infancy, the statute of limitation, &c.

Is the new matter here introduced into the replication, a sufficient avoidance of the defendant's plea ? The discussion of this will necessarily embrace this, as well as the *third* and *fourth* causes of demurrer assigned.

We contend that every thing in the shape of settlement of accounts and ascertaining the amount and extent of the liabilities of executors, administrators and guardians, is to be determined in the Orphans' Court, and that the courts of common law, are only to be resorted to, to enforce the payment of the amount so ascertained.

The 3d section of the act of 4th April, 1794, *Purdon,* 671, says, " Any executor or executors, administrator or administrators, with or without a copy of the will annexed, may with the leave of the register's or Orphan \_ court, in the respective counties, make a settlement of his or their accounts, so far as he or they shall have admin-

(Thomas *v.* Reigel et al.)

istered the estate of the deceased, and also, with leave of either of the said courts, may be dismissed from the duties of his or their appointment, and surrender the residue of the estate under his or their care, to such person or persons as the said court may appoint." The register to take security in double the amount of the real estate, and to administer the usual oaths, and grant administration of the unadministered part of such estate.

This is the provision in relation to voluntary resignations.

The 2nd section of the act of the 27th of March, 1713, *Purdon,* 667, authorizes the court to dismiss administrators for embezzlement, waste, misapplication, &c. to revoke the administration, and grant new letters to other persons, who may bring trover or detinue for the goods and chattles, which came to the former administrator's hands and remain unadministered.

The 3d section of the same act, authorizes the court to require securities of executors in certain cases, such as a feme executrix intermarrying, an executor becoming insolvent, refusing to account, &c.

The act of the 4th of April, 1797, was intended to carry these provisions still further, and the preamble shows the evil intended to be remedied. *Purdon,* 670. The first section provides that executors and administrators, who are wasting or mismanaging an estate, may be required to give security, and if they fail to do so, the Orphans' Court may dismiss them and award administration *de bonis non* to be granted by the register, and order the former executor or administrator to pay over and deliver to his successor, " all the goods, chattles, rights, credits, title deeds, evidences and securities, which were of the decedent, and which came to his or their hands, and remain unadministered, and to account with the said successor for all and every the goods, chattles, rights and credits, which have been previously administered, and pay over the balance which shall remain due from him to such successor," as the court shall award and order; and provide how the payments and delivery may be enforced.

If it be said that there is a distinction between a resigning and a dismissed executor, because one is a responsible, the other a mismanaging one; the answer is that these *acts* make no such distinction. The first section of the act of 1797, does not use the term *dismissed,* throughout. It directs the court to vacate the letters,·to compel the first executor or administrator to deliver over, and if the superseded executor, &c. shall not comply, then to sequester, &c. Evidently showing, that he is to be held continually liable in the Orphans' Court, until he does settle, and pay, and deliver over.

In the 3rd section, which is in strict connexion with the first, the court is authorised to dismiss the executor or administrator from the duties of his appointment, and to direct the surrender over to the successor, &c. Rights and duties are correlative terms. If discharged from the duties, they are discharged from the rights and

(Thomas *v.* Reigel et al.)

responsibilities of executors, or the decree of discharge is perfectly nugatory. If they are still held responsible, they should have the rights of executors, and can they as executors sue for a chose in action due the decedent, after such a discharge? They must have all the rights of executors, or none. There cannot be a divided right, or a divided responsibility, part existing in the dismissed executor, part in the administrator *de bonis non,* with the will annexed.

Creditors are as much liable, as legatees, to look to the settlement of accounts in the Orphans' Court; as well in solvent, as in insolvent estates. By the 9th section, of the act of 4th April, 1797, *Purdon,* 672, the register is to give notice " to all legatees, creditors, or other persons, that the account of any executor is filed, and on a given day will be presented to the Orphans' Court for confirmation and allowance.

In the Massachusetts statute, which authorizes the removal of an executor, residing out of the state, or who shall remove, &c. There is no provision requiring the superseded executor to account to the succeeding one. See 19 section, *Mass. Stat.* 2 *Shepperd's Touchstone,* 126. Yet under this statute, it was held, that a plea of being dismissed, after suit brought was a good bar, without the averment of the appointment of a successor, *Jewett* v. *Jewett,* 5 *Mass.* 278--9, although the same objection in substance was urged there, that is here. Chief Justice PARSONS, in that case draws the true distinction between the English law and ours. Here in case of deficiency of assets, the debts are paid *pro rata,* and the first administrator cannot retain, if he could, creditors would be injured. To allow the plea will do no injustice, to disallow it might.

That an executor may be discharged, either on his own application or by adversary proceedings, is manifest from the acts cited. See *Tremells* v. *Tremells,* 17 *Serg. & Rawle,* 144. And the succeeding administrator is bound at his peril, to see to the due settlement of the accounts of his predecessor. It is alleged on the authority of the case of *Allen* v. *Irvin,* that there is no privity between the executor and the administrator *de bonis non ;* we grant that there is not at common law, but the act of 1797 was passed to remedy that, and gives the right.

Take the cases in England, most like this—administration *durante absentia—durante minore ætate.* When the time arrives the administrator ceases, and he is to account to the executor. No action can afterwards be maintained against him. *Brooking* v. *Jennings,* 1 *Modern,* 174-5, to this effect, on a plea of fully administered. The new one, hath his remedy, if he hath wasted, but he is not liable to other men's suits. The reference in this case to *Cro. Eliz.* 43, is erroneous, the case is 3 *Croke,* 82. (*Cro. Car.* 88.) See also, *Toller,* 474.

In opposition to this doctrine, *Packman's Case,* 6 *Co.* 19, is cited, for *Wentworth* is a mere reference to that authority. If these cases

(Thomas *v.* Reigel et al.)

are law in England at this day, they are not in Pennsylvania, at least not in a case, where he has settled his accounts, and been discharged. The case of *Lawrence* v. *Croft, Keble*, 158, is not law at this day, for it says that the plea of fully administered, should be pleaded in abatement. Nor will the case of *M'Fadden* v. *Geddis*, 17 *Serg. & Rawle*, 336, make any difference. There a man as executor received a sum of money into his hands, and the will was afterwards set aside. He was sued as late executor, for the proportion of the money coming to the plaintiff, agreeably to the settlement of his account in the Orphans' Court, and no objection taken to the form of action. *Kendall* v. *Lee*, 2 *Penn. Rep.* 485, and *Potts* v. *Smith*, 3 *Serg. & Rawle*, 361, are inapplicable. In the first case, the first administrator had died, and the funds which came into his hands were the proceeds of real estate, for which special security was given. These were funds not embraced in the ordinary administration. In the latter, the administrator had died, and administration *de bonis non*, was granted to another. There, there was no privity, and no suit could be maintained. In this case, the act expressly directs the accounting and paying over to the successor, and points out how it can be enforced. In the case of deceased executors or administrators, there is no continuance of the representative character, consequently no privity, and the provisions of the acts of 1713 and 1797, do not reach them; they remain as at common law.

The defendants are not discharged from pre-existing liabilities by their dismissal. They are responsible as far as legally liable. But it is in the Orphans' Court. That court has peculiarly the jurisdiction, given by the statute and it is convenient it should possess it.

The contest between the parties is as to the *quantum* of assets. How is that to be ascertained? In the Orphans' Court. If the bonds, goods and chattels mentioned in the replication were assets, then they were either administered or *unadministered*. If administered, there is an end of the question; if *unadministered*, then by the express terms of the statute, he was to deliver them over to his successor. If administered, the Orphans' Court have passed upon them and have not charged the defendants with them. They are included in the inventory. The form of the administration bond, (act of 19th April, 1794, sec. 1, *Purdon*, 401,) requires the accountant to make a true and just account of his said administration, "and all the rest and residue of the said goods, chattels and credits which shall be found remaining upon the said administrator's account, the same being first examined and allowed by the Orphans' Court, &c. shall deliver and pay to such person or persons, &c. as the said Orphans' Court by their decree and sentence shall limit and appoint." No suit can be maintained in the Common Pleas until the account is settled in the Orphans' Court. Even in a suit for a legacy on the plea of the want of assets, the Common Pleas are bound to

(Thomas *v.* Reigel et al.)

stay proceedings and auditors are to be appointed to settle the accounts. (Act of 21st March, 1772, sec. 3, *Purd.* 566.)

By the 14th section of the act of 19th April, 1794, *Purd.* 404-5, the power is expressly given to the Orphans' Court, to appoint auditors to settle and adjust the rates and proportions of the remaining assets whose report, if approved by the court, shall be confirmed, and the executors or administrators shall pay the creditors accordingly.

The whole scope of the Orphans' Court laws, show that the question as to the *quantum* of assets is appropriately within the power of that court.

The case of *App* v. *Dreisbach,* 2 *Rawle,* 287, is something similar to this. That was a case of testacy, and the executor said he did not charge himself with a particular sum of money, because it had been arranged between him and the testator in his lifetime. This was denied, but because it had been acted on by the Orphans' Court, and unappealed from, it being a matter within their jurisdiction, it could not be overruled in a suit in the Common Pleas. See also, *McPherson* v. *Rees,* 2 *Penn. Rep.* 52—a debt released cannot be recharged.

But it is said that legacies ought not to be introduced into the accounts, and *M'Coy's appeal,* 15 *Serg. & Rawle,* 60, is cited. That is a mere direction as to what is the proper mode of stating an account. The case of *M'Cullough* v. *Montgomery,* 7 *Serg. & Rawle,* 31, is also cited. That case was decided, when it was supposed that an account settled in the Orphans' Court, was not conclusive. And although there is a pretty strong indication of an opinion that the Orphans' Court have not jurisdiction *to compel the payment of a legacy,* yet upon the subject of whether the account would be conclusive against the legatee, even of the payment of a debt, the court give no opinion. The court say it is not conclusive of the payment of a legacy. Here, however, no credit is taken for a legacy. But the accountants say that they do not charge themselves with certain sums, because the bonds and goods were given up to those persons pursuant to the will. It is an omission to charge themselves with assets for the reasons stated. And surely the question whether they were chargeable with assets, was a subject legitimately within their jurisdiction.

See Judge HUSTON's opinion in *Sterrett's appeal,* 2 *Penn. Rep.* 424, in which it is expressly said, it is the duty of the Orphans' Court to allow to executors and administrators, in the settlement of their accounts, a credit for moneys paid to heirs and distributees.

If the Orphans' Court had jurisdiction of the subject-matter, it was for them to say what was proper and what was not proper to be introduced. The question is not what this court would have done on appeal, but what has been done.

There is no reason for any distinction between the conclusiveness of the settlement as to creditors and as to legatees here—in Eng-

land there is. There, as to legatees, the settlement before the ordinary is binding. But as to creditors, it is not. Here the decree of the Orphans' Court is binding on all.

Here we aver, that we settled with *Lynn* the succeeding administrator, and paid over and delivered to him all in our hands. This is not denied; and it will be observed that after *Smith* and *Reigel* were dismissed, *Jacob Rothrock* was the remaining executor, and he was subsequently dismissed, on an adversary proceeding against him.

That the decree of the Orphans' Court was conclusive, if the subject-matter was within their jurisdiction, the defendants' counsel cited, *M'Coy* v. *Porter*, 17 *Serg. & Rawle*, 59. *M'Fadden* v. *Geddis*, *Ib.* 336. *M'Pherson* v. *Cunliff*, 11 *Serg. & Rawle*, 422. *M'Grews' appeal*, 14 *Serg. & Rawle*, 396. *Heager's Estate*, 15 *Serg. & Rawle*, 65. *App* v. *Dreisbach*, 2 *Rawle*, 357. *M'Pherson* v. *Rees*, 2 *Penn. Rep.* 521.

Is there any question that, if a creditor had come forward at the time, and objected to the account as stated, on the ground that these assets were not brought in, the Orphans' Court *could* have charged them against the accountant, upon their liability to account for them being made to appear? If so, then the time for appealing having gone by, the account is conclusive. Suppose there could be recovered twenty-five per cent. on these bonds—is the Common Pleas the tribunal to distribute this among the creditors, *pro rata?*

The current of authorities of late years, has placed the settlement of accounts of decedents' estates in the Orphans' Court, as in every respect the most suitable and convenient, and as the mode settled by law. The Orphans' Court settles what is the balance of the estate, and the court of Common Law, can only be resorted to for compelling payment of such balance to those entitled. A regard for consistency in our decisions, and for maintaining the security derived from a settled course of adjudication, demands that this system should not be departed from, and the profession and the community again launched on an ocean of uncertainty without chart, compass or rudder.

The balance in a guardian's hands, cannot be sued for until his account is settled in the Orphans' Court. *Bowman* v. *Herr's Executors*, 1 *Penn. Rep.* 282. *Nutz* v. *Reutter*, 1 *Watts*, 229.

The following principles laid down in English treatises, will show the course of proceeding there, and the difference between that country and Pennsylvania, in regard to the discharge of executors and administrators, and the effect of such discharge.

In England, when executors account, they can be discharged, "make a due account thereof, and receive an acquittance." *Swinb.* pt. 6 s. 18. p. 465. But this will only discharge them in the spiritual court, but not of suits at Common Law, where every particular must be again proved. *Toller*, 494. Where the object of the executor or admisistrator is to make his account, all the

(Thomas *v.* Reigel et al.)

legatees or parties in distribution are to be cited to appear at the making of the account, for it shall not be conclusive on such as shall be absent, and have not been cited. *Swinburn,* pt. 6, sec. 20, p. 467. *Williams,* 1264. 4 *Burn's Ec. Law,* 426, 8th ed. 487. When an executor or administrator is called upon by any one party to account, he shall cite the legatees or next of kin, in special, and all others in general, having or pretending to have an interest, to be present if they think fit, at the passing of the same, and then on their appearing or contumacy in not appearing, the Judge shall proceed. 4 *Burns, ut sup. Williams,* 1264.

After the investigation of the account, if the ordinary find it true, and perfect, he shall pronounce its validity, and in case all parties interested as above mentioned, have been cited, such sentence shall be final, and the executors or administrators shall be subject to no further suit. 4 *Burns,* 428, 8th ed. 487. *Swinburn,* part 6, sec. 21. *Williams,* 1266. The effect of the settlement, is that the executor having well and faithfully performed his duty, and made his account, ought to be acquitted and discharged from further molestation and suits, as one that hath fully administered and finished his office. *Swinburn,* pt. 6, sec. 21, *pl.* 2, p. 419. Neither is he to be called by the ordinary to any further account, and this discharge cannot be obtained till he has fully accounted. *Ib. pl.* 3.

A creditor may cite the executor or administrator, before the ordinary, to settle his account, but he cannot call for vouchers, or offer objections to the account. In respect to him, the oath of the party is at once conclusive. Such litigation would be altogether fruitless, as that court has no authority to award payment of a debt. *Noy* 78. *Williams* 1265. *Toller,* 495. The creditor's only object in such a proceeding is to gain an insight into the fund previously to his proceeding in an action at Common Law. But a bill in equity for the discovery of assets is the more usual as it is the more effectual remedy. *Toller,* 489. 2 *Fonbl.* 2nd ed. 414, *note.* In regard to distribution, as the act of parliament contains no negative words, equity has concurrent jurisdiction with the ordinary, and being armed with larger powers, affords a more effectual relief. 1 *Vernon,* 134. *Mathews v. Newly, Williams,* 1268. Equity considers an executor as a trustee, &c. *Toller,* 479, sec. 4, ch. 10, Book 3.

If the executor finds the affairs of his testator so complicated as to render the administering of the estate unsafe, he may institute a suit against the creditors for the purpose of having their several claims adjusted by the decree of the court. 2 *Williams,* 1172, pt. 5, Book 1, c. 2, citing 2 *Vernon,* 37. *Fonbl.* Book 4, pt. 2, c. 2, sec. 3, *note, n.*

It is true that Lord TALBOT said that such suits have been discountenanced (*Cases Temp. Talbot,* 224. *Morrice v. Bank of England,*) but his doctrine has since been overruled in practice. *Williams,* 1177.

(Thomas *v.* Reigel et al.)

Where the court (of Chancery) has pronounced a decree for account and payment of debts and legacies, under which all the creditors or legatees may claim, the executor or administrator may obtain an injunction to restrain proceedings by a separate creditor or legatee, either at law or in equity, as it would greatly embarrass the just administration of the assets. *Williams*, 1176. *Mitford's Plead.* 168, 4th ed. *Drewry* v. *Thacker, 3 Swanst,* 541-4. See also *Williams,* 1177. *Sutton* v. *Mashiter,* 2 *Sim.* 513. *Paxton* v. *Douglass,* 8 *Vezey,* 520. *Perry* v. *Phillips,* 10 *Id.* 39-40. *Clark* v. *Ormond, Jacob,* 122. (Where it is held that a legatee may make the application.) *Largan* v. *Bowen,* 1 *Scho. & Lef.* 299.

And see the rule: "It is obvious that an executor or administrator may compel the creditor to take an equal distribution of assets, and the courts of equity have accordingly of late years, allowed *friendly* bills to be filed against executors and administrators which are in truth suits by them in the name of a creditor against themselves." *Williams,* 1177, 8, and *notis.* 18 *Vezey.* 469, 1 *Camp.* 147.

Where a creditor has proceeded at law before an injunction is granted, he shall be allowed the costs of such suit at law *previously* made. But he shall not be allowed the costs of further proceedings after actual notice of the decree. *Williams,* 1179, and cases there cited in notes.

Thus it seems in England in order to do justice, the parties must go into a Court of Chancery to have the accounts finally closed and a decree of distribution of the assets made; and when this is done, the executor or administrator is discharged and acquitted from further suits at law.

Here our Orphans' Courts are invested by statute with the powers which the British courts of equity have been obliged to assume from necessity. In our Orphans' Court notice is always given as directed by law which is notice to all the world. See *App* v. *Driesbach,* 2 *Rawle,* 287, in which the sufficiency of this notice is held.

Reason, policy, the peace and safety of society, require that a settlement in the Orphans' Court remaining undisturbed for upwards of ten years, should be conclusive on every body.

As to the 5th cause of demurrer; it has already been answered in the argument in relation to the preceding causes of demurrer. There is no certain or sufficient issue tendered by the replication.

That the replication should have concluded to the country, see 2 *Chitty,* 657-658. The forms of replications to plead *ne unques executor,* and *plene administravit,* with replication of a *devastavit.*

If the court should be of opinion that these defendants are mistaken as to the effect of their discharge, then to do justice a withdrawal of the demurrer should be permitted, with liberty to plead so as to ascertain the liabilities of the defendants respectively, and the nature and extent thereof.

(Thomas *v.* Reigel et al.)

The opinion of the court was delivered by

KENNEDY, J.—The principal, and indeed as it appears to me the only question worthy of consideration in this case, is, whether executors who have appropriated the assets of the estate to the payment of legacies instead of the debts of the testator, and upon settling their administration account afterwards in the Orphans' Court have obtained a discharge from their executorship, remain liable notwithstanding, to the creditors for the assets so applied to the payment of the legacies.

It is proper to bear in mind that the discharge of the executors in this case from their office as such, was upon their own application and wish to resign the same; and not because they were found to be wasting or mismanaging the estate, and had failed to give security according to an order previously made upon them by the Orphans' Court to that effect. The surrender then of their office being voluntary, it seems to me that they were only required by the act of assembly of 1797, to pay or deliver over to the administrator *de bonis non*, the residue of the estate which remained in their hands unadministered, and inasmuch as more than a year, the time for which the payment of legacies is suspended by the act of assembly, had elapsed after the death of the testator before the resignation of the executors, it could not perhaps be well said that whatever of the estate they had appropriated to the payment of legacies, although improperly so applied, formed any part of the *residue* thereof mentioned in the act as *remaining* in their hands *unadministered.* Besides, after the expiration of the year, and having paid all the debts within their knowledge against the estate, it was their duty to pay the legacies, if they had assets, upon receiving from each legatee a bond with at least two sufficient sureties, as the law then stood, conditioned for a return of his legacy, or so much thereof as should be wanting thereafter to pay debts subsequently appearing against the estate: so that if the defendants in this case after the expiration of the year, without any knowledge of the plaintiff's claim, upon receiving the requisite bonds and sureties from the legatees, paid to them all the assets remaining in their hands unadministered, they would only be liable to the plaintiff or other creditors giving notice subsequently of their demands, as long as the legatees or their sureties should remain solvent and able to refund. But if an executor, after notice given him of a debt against the estate, will appropriate the assets to the payment of legacies instead of such debts, he will be responsible to the creditor, whether the legatees and their sureties in the refunding bonds continue to be good or not. So if he pay legacies without taking refunding bonds, or without taking such security as shall be considered good at the time, he will be liable for the amount so paid to creditors, if there be any unpaid who shall seek payment afterwards of their debts: because it is a clear violation of

(Thomas *v.* Reigel et al.)

duty on his part either to pay legacies in preference to debts made known to him, or to pay legacies without taking such security as is required by the act of assembly : which I believe, according to the act now in force on this subject, ought to be approved of by the Orphans' Court. Hence it is not only reasonable but just, that if he pays legacies without taking such security on behalf of creditors as the law requires, that he should stand himself in the place of such security and be responsible to the creditors of the estate in the same manner and to the same extent as if it had been taken. And this I think may be considered a sufficient answer to a suggestion made by the counsel for the defendants, that their clients were protected against the claim of the plaintiff by the statute of limitations. For as we have no act of assembly barring a suit on a refunding bond, and protecting the sureties from their liability under it after any specific length of time, I do not see how the defendants can claim protection on such ground. They must be considered liable to the creditors at least as long as the sureties in the refunding bonds would have continued to be liable to them, had they been taken. And if they have failed to take such bonds, they have failed to perform their duty, and have certainly no right to claim to be placed in a better situation than if they had done all that the law required of them.

The plea of the defendants as it appears to me amounts to nothing more than *plene administraverunt,* and would have been bad and insufficient, notwithstanding all the special matter set forth in it, had not the averment to this effect been inserted in the conclusion of it. The defendants might have given in evidence all the special matter stated in their plea, under the plea of *plene administraverunt,* according to the principles laid down in *Brooking* v. *Jennings,* 1 *Freeman's Rep.* 150, *ca.* 171. *S. C.* 1 *Mod.* 174. *Garter* v. *Du, Ibid.* 13, *Ca.* 12. *Anon.* 1 *Salk,* 313, reported *George* v. *Pierce,* 7 *Mod.* 31. The replication therefore of the plaintiffs which goes to show that the defendants had not properly administered all the assets which came to their hands, but on the contrary had misapplied and wasted the same to an amount more than sufficient to pay the plaintiff's demand, by paying legacies with them, was an appropriate and pertinent answer to their plea, and if true sufficient to avoid it. Accordingly it is laid down in *Packman's case,* 6 *Co.* 19, that "if an administrator waste goods and afterwards administration is committed to another, yet any debtee shall charge him in debt, and if he pleads the last administration committed to another, the plaintiff may reply that before the second administration committed, he had wasted the goods."

This principle was also agreed to by three of the judges in *Brooking* v. *Jennings,* 1 *Freem.* 150. VAUGHAN, Chief Justice, dissenting. In *Chandler* v. *Thompson, Hob.* 266, this question was debated, though not decided, but the court say, "perhaps he (meaning the

(Thomas *v.* Riegel et al.)

creditor) may have an action against the *former* executor for so much as he had not *lawfully* administered." And in *Oxford* v. *Rivett, Cro. Car.*, 79, 93–4, although the point was not directly made and decided, yet it seems to be plainly inferable from what is there said by the judges, that if the defendant who had been administratrix *durante minore cetate* of the executor appointed by the will, had been found guilty by the jury of a *devastavit* during her administratorship, and before the executor attained full age, that she would have been liable directly to the plaintiff in the action who sued as a creditor of the testator. It is true that in opposition to this doctrine, Chief Justice VAUGHAN is reported in *Brooking* v. *Jennings,* according to 1 *Mod.* 174–5, to have said, " when an infant executor comes of age, the power of an executor *durante minore cetate* ceaseth ; and the new executor is then liable to *all* actions : if the *former* executor wasted, the *new* one hath his remedy against him ; but he is not liable to *other* men's suits ;" in which ATKINS, Justice, is said to have concurred. But in *Freeman,* 150, where the case is also reported, no mention is made of such opinion having been expressed by Chief Justice VAUGHAN. On the contrary, it is said " that three of the justices did seem to agree, that if an executor *durante minore cetate,* commits a *devastavit* and then obtains a release from the heir, (but meaning the rightful executor) being come of age, that this *will not secure him against the creditors* who had once a right of action attached in them, which shall not be *divested* by his release ;" of which Chief Justice VAUGHAN is merely reported to have *doubted.* So far then as the weight of judicial authority or opinion is entitled to regard on this point, it seems to be in favour of the creditors having the right to maintain their respective actions directly against the first executor or administrator when he has committed a *devastavit.* But it has been objected that this would defeat the provisions of our act of assembly, which requires the assets to be apportioned among debts of the same grade, according to the order therein prescribed, when they are found to be insufficient to pay the amount of the several grades. The case of *Jewett* v. *Jewett,* 5 *Mass.* 275, has been cited and relied on to sustain this objection, in which the Supreme Judicial Court of Massachusetts held, that to an action against an administrator, it was a good plea in bar that after the commencement of the action against him he had been *removed* from office by the judges of probate ; because by the laws of that state the creditors of a deceased were to be paid *pari passu,* excepting debts due to the United States, to the commonwealth, and charges on account of the last sickness and funeral of the deceased ; and in order, as the court say, that this might be effected, it was necessary that all the assets unadministered should be brought into the hands and possession of the administrator for the time being. And it seems from the case of *Coleman* v. *Hall,* 12 *Mass.* 570, that the administrator has the right, and indeed that it

(Thomas *v.* Riegel et al.)

is his duty to apportion the assets at any period, however late, when he shall have discovered that the estate is insolvent; even in regard to judgments obtained against him for the whole amount of the debts therein claimed, at a time when the assets were amply sufficient to pay all the debts which had then come to his knowledge. The law of this state however has been held to be different in this latter particular; for where an executor or administrator having assets sufficient to pay all the debts within his knowledge, is sued for a debt, and judgment rendered against him for the amount thereof, but before it is paid by him, other debts of equal or even superior grade are made known to him, still he is bound to pay it, and will be justified in doing so, out of the assets in preference to these latter debts coming to his knowledge after the rendition of the judgment. Besides, by our act of assembly on this subject, it is the duty of the executors or administrators, whenever the assets are insufficient to pay the debts of the deceased, to apply to the Orphans' Court of the proper county for the appointment of auditors to settle and adjust the rates and proportions of the assets due and payable to the creditors, in the order prescribed by the act; and no such application having ever been made by the defendants in this case, although they continued in the office of their executorship two years beyond the time allowed by the act of assembly, for settling and paying the debts of the estate, we are bound to presume that they considered the assets amply sufficient, and that they were so in fact, to pay all the debts against it. Indeed it is not alleged now by them that the assets were not sufficient for this purpose; and if the conduct imputed to them by the plaintiff's replication be true, that they paid legacies to a large amount, it is clear that they never could have thought the estate insolvent. It would seem then that there is no pretence for deciding on this ground that the plaintiffs ought not to recover in this action. But it may also be observed, that the defendants in this case were not *removed* from their offices for *mal-administration,* as was most probably the case in *Jewett* v. *Jewett.* This in most, if not in all cases, would certainly make it not only expedient but necessary for the safety of all those interested in the estate, that the party turned out of office for such cause should be made accountable immediately to the administrator *de bonis non,* for all errors committed by him in the administration of the estate which might ultimately prejudice the rights of those concerned. As such pressing necessity however did not exist in this case, it may as well be that the plaintiff should maintain her action directly *against* the defendants, in case they be liable in any course of proceeding for the payment, or for assets to make payment with, of her claim. This will certainly tend to prevent circuity of action, and at the same time to promote the speedy administration of justice, as well as to prevent the accumulation of costs unnecessarily, without producing the least injustice, that I can perceive, to any one. I am

(Thomas *v.* Riegel et *al.*)

therefore inclined to think that the replication of the plaintiff was sufficient to avoid the plea of the defendants, and that the court below erred in rendering a judgment on the demurrer in favour of the defendants. The judgment is therefore reversed; and I am strongly inclined to believe that we ought to render a judgment for the plaintiff, notwithstanding the earnest declarations of the counsel for the defendants, that the merits of the case, when all the facts and circumstances connected with it are fully disclosed, will be found to be in favour of their clients; because unless they can either set aside the plaintiff's bond, show payment, or repudiate the facts set forth in the plaintiff's replication, I confess that I do not. see well how they are to escape from a recovery by the plaintiff.. And if they can do either of these things, it is unaccountable that the demurrer should have been resorted to and relied upon. Such experiments are not to be encouraged, when made without any colourable grounds to support them; but as this case was not free from difficulty altogether, it is thought more advisable not to enter a judgment for the plaintiff, but to remand the cause to the court below, that the defendants may have an opportunity of withdrawing the demurrer by leave of the court there, and rejoining to the plaintiff's replication, either by putting the facts of it in issue, or, alleging some new matter in avoidance of it, for the trial whereof, when the issue shall be joined, a *venire facias de novo,* if necessary, is awarded.

. Judgment reversed.