Clement DENTLY, Petitioner-Appellant,

v.

Michael P. LANE, et al.,
Respondents-Appellees.

No. 80–1183.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 16, 1981.

Decided Nov. 10, 1981.

Gail A. Niemann, Chicago, Ill., for petitioner-appellant.

Michael Accettura, Asst. Atty. Gen., Springfield, Ill., for respondents-appellees.

SPRECHER, Circuit Judge.

Clement Dently filed a petition in federal district court for a writ of habeas corpus. Dently claimed that he was denied his right to the effective assistance of counsel because his attorney had a conflict of interest and performed incompetently. The district court denied the petition without holding an evidentiary hearing. *Dently v. Lane,* No. 78–2327 (S.D.Ill. Apr. 24, 1979). We vacate the order of the district court and remand for an evidentiary hearing.

I

On July 21, 1973, Dently and William Logan were arrested in Danville, Illinois, and charged with rape. The day after their arrest, both defendants were placed in a lineup with three other men. Dently was the only person in the lineup with a facial scar. Janet Donaldson, the complaining witness, identified Dently as one of her assailants, but was unable to identify Logan

with certainty. Logan was represented at the lineup by a privately retained attorney named Gaston; Dently had no counsel.

Dently and Logan appeared in court for their preliminary hearing on August 23, 1973. At the beginning of that hearing, Edward Litak, the Public Defender of Vermilion County, was appointed to represent both Dently and Logan. The state's only witness at the preliminary hearing was a deputy sheriff who testified that Janet Donaldson had positively identified Dently at the lineup, but that she had had difficulty identifying Logan. On September 17, 1973, Dently and Logan both were charged in a three count indictment with rape, deviate sexual assault, and robbery.

The two defendants were arraigned on September 21, 1973, and Litak again represented both Dently and Logan. Litak acknowledged receipt of the indictment for the defendants and advised the court that each defendant wished to enter a plea of not guilty. Dently then stated: "I am firing my attorney as of now. I don't want him as my attorney on the grounds he refuses to cooperate with me." Record at 44. The judge questioned Dently about his assets, and then concluded the hearing, saying: "I will decide whether I will appoint another attorney and let you know." Id. The record contains no indication that the trial judge ever investigated Dently's complaint or questioned him or counsel about the request for a new attorney. Later that day the court appointed Kennith Blan, an Assistant Public Defender of Vermilion County, to represent Dently. It does not appear that anyone, either the judge or counsel, ever explained to Dently that Litak and Blan were professionally associated.

Although Public Defender Litak's formal representation of Dently had ceased, he continued to file papers on Dently's behalf. Four days after the trial court had appointed Assistant Public Defender Blan to represent Dently, Litak filed a Motion for Disclosure on behalf of both Dently and Logan. On January 4, 1974, less than two weeks before trial and three and one-half months after his formal representation of Dently

had ceased, Litak filed a discovery response on behalf of Dently.

At the same time, Litak was representing the interests of Logan. On October 14, 1973, Litak filed a motion on behalf of Logan to sever the trials of the two defendants. In this motion, Litak stated that Logan could not receive a fair trial if he were tried with Dently because "the actions and the defense of [Dently] will be such that there will be prejudice to [Logan]." Record at 78. Blan never filed a motion to sever on behalf of Dently. Litak's motion to sever was not heard by the court until January 8, 1974, shortly before defendants' trial began. At that time, Litak argued that Logan would be prejudiced by a joint trial because he had not been positively identified, but Dently had been. The court denied the motion without stating its reasons.

The defendants' trial was originally scheduled to begin on October 30, 1973. On October 29, however, the state moved for and was granted a sixty day continuance. As a basis for this motion, the prosecution alleged that the complaining witness, Janet Donaldson, could not testify at a trial at that time because of severe emotional problems. In support of its motion for a continuance, the state submitted a letter from a Dr. Lloyd F. Jenk, who stated that he was Janet Donaldson's treating psychiatrist, and that she had suffered from "major emotional decompensations (psychotic states)" since 1965. Record at 83. Almost two months later, Blan and Litak filed a joint motion for the appointment of a psychiatrist to examine Janet Donaldson. The motion was denied at trial. Neither Blan nor Litak ever attempted to subpoena Dr. Jenk or his records.

At trial the state called fourteen witnesses. Litak conducted most of the cross-examination. During arguments on motions for directed verdicts at the close of the state's case, Blan stated that he wanted to make a motion based on the suggestive nature of the lineup: Janet Donaldson had described one of her attackers as having a scar on his face, and Dently was the only person in the lineup with such a scar. Both

the prosecutor and Public Defender Litak, however, agreed that such a motion was improper at the close of the state's case. Blan did not pursue the motion, and the court never ruled on it.

Litak called a single witness on behalf of Logan, William R. Gaston, the private attorney who had represented Logan at the lineup. Gaston testified that Janet Donaldson had positively identified Dently, but had been unable to identify Logan. Blan did not cross-examine Gaston about the identification of Dently. Instead, he called Gaston as the sole witness on behalf of Dently, and elicited testimony that Dently was the only man in the lineup with a facial scar.

At the conclusion of the joint trial, the jury convicted Dently of the rape charge, but acquitted Logan on all three counts of the indictment. On March 7, 1974, Dently was sentenced to the Illinois Department of Corrections for a term of not less than ten years nor more than thirty years.

Dently's conviction was affirmed by the Illinois Appellate Court. *People v. Dentley*, 31 Ill.App.3d 679, 334 N.E.2d 774 (4th Dist. 1975). On appeal, Dently was represented by the appellate public defender. Dently's present attorney claims that Assistant Public Defender Blan labored under a conflict of interest and that he performed incompetently were not raised in that appeal.

Dently next filed a petition for post-conviction relief, and the trial court again appointed the Public Defender of Vermilion County to represent him. Dently, however, objected to the appointment of the Public Defender because he wished to raise the issue of ineffective assistance of counsel. The court then appointed a private attorney to represent him. The trial court dismissed his petition without conducting an eviden-

tiary hearing, and the appellate court affirmed.[1]

On October 23, 1978, Dently filed a *pro se* Petition for Writ of Habeas Corpus, alleging that his confinement by the State of Illinois violated his sixth and fourteenth amendment rights to the effective assistance of counsel. The state moved for summary judgment. After ordering the state to secure the record and file it with the court, the district court granted the state's motion without conducting an evidentiary hearing, finding that "there are no facts revealed in the record which support petitioner's contention." *Dently v. Lane*, No. 78–2327, slip op. at 2 (S.D.Ill. Apr. 24, 1979).

## II

The thrust of Dently's claim is that he and his codefendant, despite their conflicting defenses, were jointly represented by members of the same public defender's office. Dently argues that such joint representation denied him his sixth amendment right to the effective assistance of counsel. Dently also contends that, even if there were no joint representation or conflict of interest, his attorney's performance failed to meet the minimum professional standard required by the sixth amendment.[2]

The Supreme Court has decided two cases recently which provide guidelines for reviewing claims that jointly represented defendants were denied the effective assistance of counsel because of conflicts of interest. In *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), the public defender repeatedly objected that his continued joint representation of the three co-defendants was inappropriate because of inherent conflicts in their defenses. The Court held that, in the face of a timely

---

1. Although the record does not contain the appellate court's opinion, it does contain a Petition for Rehearing in the appellate court which states that the dismissal was affirmed pursuant to Illinois Supreme Court Rule 23. That rule allows the court to dispose of an appeal by order, without filing an opinion.

2. *See United States ex rel. Williams v. Twomey*, 510 F.2d 634, 640 (7th Cir.), *cert. denied*, 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975) ("The criminal defendant, whether represented by his chosen counsel, or a public agency, or a court-appointed lawyer, has the constitutional right to an advocate whose performance meets a minimum professional standard.").

objection, the judge's failure to appoint separate counsel, or to ascertain that the risk was too remote to warrant separate counsel, deprived the defendants of their sixth amendment rights. *Id.* at 484, 98 S.Ct. at 1178.

Two questions, however, were expressly reserved in *Holloway.* The first question was whether a state trial judge must inquire into the propriety of multiple representation when no party makes an objection. The second question was whether the mere possibility of a conflict of interest warrants the conclusion that the defendant was denied his right to counsel. *Id.* at 483–84, 98 S.Ct. at 1178–79. In *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the Supreme Court addressed both questions. The Court held that "[i]n order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348, 100 S.Ct. at 1718. The trial court has no affirmative duty to inquire into the propriety of multiple representation. However, a defendant who shows that a conflict of interest affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief. *Id.* at 349–50, 100 S.Ct. at 1718–19.

*Holloway* and *Cuyler* thus provide a series of inquiries to be considered when deciding whether a defendant was denied the effective assistance of counsel because of a conflict of interest. Dently has brought out certain factual matters which, in view of the law of these cases, require further investigation by the district court.

*Holloway* presents the initial question of whether a trial judge should have been alerted to a possible conflict by a defendant's objection. Dently argues that his statement at the arraignment, "I am firing my attorney as of now. I don't want him as my attorney on the grounds he refuses to cooperate with me," Record at 44, was adequate notice that there was a conflict problem. If Dently is correct, the next question to be asked is whether the trial judge's appointment of Assistant Public Defender Blan alleviated the conflict.

If Dently does not qualify for relief under *Holloway, Cuyler* raises three further questions for a court to consider: (1) Was there joint representation of co-defendants? (2) Was there an actual conflict of interest between co-defendants? (3) Did the alleged conflict of interest affect the adequacy of legal representation afforded the defendant?

(1) As to joint representation, it is undisputed that Public Defender Litak continued to make filings for Dently long after he had been removed as Dently's attorney. Moreover, at trial, Litak and Blan occasionally strayed from their roles as attorneys for their individual clients. Litak conducted most of the cross-examination of prosecution witnesses, and Blan appears to have argued for both defendants on motions at the close of the state's case.

(2) The possibility of a conflict of interest between the two defendants in this case is apparent. The complaining witness had positively identified Dently in the lineup, but she could not identify Logan. Dently would, therefore, want to attack the reliability of the lineup while his co-defendant Logan would want to bolster it. The transcript reveals that the complaining witness's identification of the defendants, or lack thereof, was indeed a central issue at the trial.

(3) Whether or not the alleged conflict of interest adversely affected the adequacy of the representation Dently received is a difficult question, but there is some evidence upon which to base such a conclusion. Blan never moved to sever Dently's trial from Logan's despite the possibility of conflicting defenses. Although Dently's defense was at least partly based on the allegedly suggestive nature of the lineup, Blan did not attempt to suppress testimony about the lineup until after the state had rested. When the prosecutor and Public Defender Litak agreed that such a motion was untimely, Blan did not pursue the matter. Finally, no effort was made to question Janet Donaldson's psychiatrist or to subpoena his records.

### III

Section 2254(d) of the habeas corpus statute, 28 U.S.C. § 2254(d) (1977), grants an applicant an evidentiary hearing in federal court if it appears, "(1) that the merits of the factual dispute were not resolved in the State court hearing;" or "(3) that the material facts were not adequately developed at the State court hearing." 28 U.S.C. § 2254(d)(1), (3) (1977).[3]

Dently has never had an evidentiary hearing on his claim that he was denied the effective assistance of counsel. Although we cannot say as a matter of law that his sixth amendment rights were violated, we find that there are factual questions that can be resolved only by an evidentiary hearing in the district court.

The district court should consider whether Dently's "firing" of Public Defender Litak should have alerted the trial judge to a possible conflict of interest that could not be remedied by the appointment of Assistant Public Defender Blan. If this incident is found not to have given sufficient notice of a possible conflict, the court must consider the *Cuyler* questions of whether there was joint representation of co-defendants, whether there was an actual conflict of interest, and whether the alleged conflict affected the adequacy of the legal representation received by Dently.

Apart from the questions outlined in *Holloway* and *Cuyler*, the court also must consider whether Blan's performance as Dently's attorney met the minimum professional standard required to satisfy the sixth amendment. *See United States ex rel. Williams v. Twomey*, 510 F.2d 634, 640 (7th Cir.), *cert. denied*, 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975).

Accordingly, we vacate the order of the district court denying the petition for a writ of habeas corpus and remand for an evidentiary hearing on the factual matters raised by Dently.

---

**3.** Section 2254(d) reads:

(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:

And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous. 28 U.S.C. § 2254(d) (1977).