UNITED STATES of America ex rel.
Otis WILLIAMS and A. D. Clark,
Petitioners-Appellees,

v.

Gayle M. FRANZEN and Tyrone C.
Fahner, Respondents-Appellants.

No. 81–2957.

United States Court of Appeals,
Seventh Circuit.

Argued May 27, 1982.

Decided Aug. 20, 1982.

As Modified on Denial of Rehearing
Nov. 8, 1982.

Terrance M. Madsen, Deputy Atty. Gen., Chicago, Ill., for respondents-appellants.

Jeffrey R. Tone, Sidley & Austin, Chicago, Ill., for petitioners-appellees.

Before CUDAHY, ESCHBACH and POSNER, Circuit Judges.

CUDAHY, Circuit Judge.

Petitioners, Otis Williams and A. D. Clark sought habeas corpus relief in federal district court from an Illinois criminal conviction, pursuant to 28 U.S.C. § 2254. The parties filed cross motions for summary judgment under Fed.R.Civ.P. 56. The district court granted the petitioners' motion on their claim of ineffective assistance of counsel[1] and the respondents appeal. We affirm, 531 F.Supp. 292.

I.

In 1974 petitioners A. D. Clark and Otis Williams, together with Ernest J. Clark, were indicted and convicted for the burglary of a store and the theft of a large quantity of meat. One attorney was appointed to represent all three defendants and continued to represent all three defendants throughout the trial court proceedings.

At trial, the state established that on March 30, 1974, a P & E Supermarket in Kankakee County, Illinois, was burglarized, and a large quantity of meat, candy, and cigarettes was taken. Because the store's bookkeeper left the building between 1:00 and 1:30 a. m., and because a neighbor testified that at approximately 3:00 a. m. he saw a station wagon parked near the door through which entry was gained into the store, it was established that the crime occurred after 1:00 a. m.

Antonio Riggins, step-father of the Clark brothers, A. D. and Ernest, testified that early in the morning of March 30, the three defendants came to his home and asked to borrow his car to move some meat because their car had broken down. Riggins eventually agreed, and thereafter drove his automobile to the location of their disabled station wagon where he and the defendants transferred meat, candy, cigarettes and chewing gum from the station wagon to Riggins' car. Riggins then drove to the home of A. D. Clark, Sr. (father of the Clark defendants), where the meat was transferred to Clark, Sr.'s car. According to Riggins' testimony, all three defendants were present at that time. Defendant Ernest J. Clark, however, had a different story, to which he testified. As will be indicated below, Ernest testified that he had joined the other defendants innocently. He stated that he went to Tony Riggins' house ahead of the others, ostensibly to get help, but actually to separate himself from whatever activity the other two defendants were carrying on. According to Ernest, upon entering the Riggins' house, he immediately went to the back of the house to talk to his sister. Ernest said he did not speak with Riggins.[2]

---

1. The district court also granted summary judgment to the respondents on petitioners' claim regarding jury instructions. Petitioners do not appeal this judgment.

2. [Direct Examination]

Q. [by Defense Attorney] And who was it that asked you to go up to Tony's place to get some help?
A. [by Ernest J. Clark] A. D.
Q. What did you say to him?
A. I told him okay.

A deputy sheriff testified that he found some fingerprints on the broken glass door of the market where entry was made. A crime laboratory technician stated that in his opinion the fingerprints were those of defendant Williams. The Chief of Police of the town where the burglary occurred testified to discovering that the freezer of A. D. Clark, Sr. was full of meat, and that the labels on the meat packages were similar to those used by the P & E Market. Clark, Sr. told the court that Riggins had brought him the meat but that the defendants had not accompanied Riggins.

Petitioners Otis Williams and A. D. Clark did not testify at trial. The only witness for the defense was defendant Ernest J. Clark, who denied any participation in the burglary. He testified that on the date of the burglary he had left a friend's house and was walking home, when a car in which Otis Williams and A. D. Clark were riding pulled up beside him. They offered him a ride home which he accepted.[3]

Later the car broke down and, as had been indicated above, Ernest J. Clark stated that he went to the Riggins' home to get help. Five or ten minutes later the other defendants arrived and then left with Riggins' car. Ernest Clark testified that he stayed back, and did not leave with the other two defendants.[4]

When cross examined by the prosecutor, Ernest J. Clark admitted he was only guessing as to the time he had left his friend's house but insisted it could not have been later than 1:00 a. m. Ernest Clark also testified on cross-examination that the station wagon in which A. D. Clark and Otis Williams were riding was full of meat (both "in the back of it and on the seat"), that no store selling meat was open at that hour and that he believed that A. D. Clark was

Q. You told him you'd do it?
A. Yes.
Q. And then you walked up to Tony's place?
A. Yes.
Q. Did you get any help from him?
A. No.
Q. So you lied to A. D., yes?
A. Yes.
Q. And in fact you went in, you talked to your sister, is that right?
A. Yup.
Q. And you never said anything to Tony Riggins?
A. I never said nothing to Tony.
Q. And about what time was it that Otis and A. D. had arrived at Tony's place?
A. I don't know what time it was they arrived behind me, about five or ten minutes later.
Q. Did they have anything with them?
A. They didn't have nothing with them that I knows of.
Q. Where did they go inside the house? Did they go some place in the house?
A. I don't know where they went in the house. I was back there playing with the baby.
Q. You never went with them?
A. No, I didn't go back with them.
. . . .
Q. You never went back to that automobile?
A. No, I didn't go back to it.
R. 381–85.

Q. [by Defense Attorney] And what—was there a conversation between you?
A. [by Ernest J. Clark] There was a conversation between us.
Q. What did they say to you and what did you say to them?
A. Asked me where I was going and I told them I was going home.
Q. Did they say anything else?
A. Told me to come on get in.
Q. Come and get in?
A. Yes.
Q. Did you?
A. Yes, I got in.
Q. All right. And when you got in what happened then?
A. They asked me—I told them I was going home, make a stop, I told them I want to go home.
. . . .
Q. All right, now, on the way while they were driving you was there any conversation that took place between you?
A. Yes, asked them where they get the stuff at that was in the car.
Q. What stuff is that now?
A. The meat.
Q. You saw some meat. What did they answer?
A. They told me none of my business.
Q. All right, and then what happened?
A. And then told me got to make a stop. Come on, take me home because I didn't want to get involved in anything.
R. 361–63.

**3.** [Direct Examination]

**4.** *See* note 2 *supra.*

unemployed at that time. R. 374–75. Finally, Ernest Clark testified that he had asked Williams and A. D. Clark to take him home because he had suspected "a little bit" that, in the prosecutor's words, "there was something wrong going on." R. 380.

On redirect examination, defendants' counsel elicited the testimony that the conditions of Ernest Clark's parole required that he be home by 1:00 a. m. R. 392–93. He responded affirmatively when counsel asked him whether the parole entered "into any concern about being found around what looked like a suspicious situation as far as all of this meat."[5] R. 282. Counsel also clarified that Ernest Clark had lied to the other defendants about going to get help when the car broke down because he "didn't want to get involved." R. 393.

All three defendants were convicted. On appeal to the Illinois Appellate Court, all three defendants were again represented by one attorney (but he was a different attorney than the one who represented them at trial). The defendants' appellate counsel contended that A. D. Clark and Ernest Clark had been denied the effective assistance of counsel by reason of the trial counsel's failure to request severance of all three cases, because the defenses of all three defendants were mutually antagonistic. A. D. Clark contended that his defense was adverse to Ernest Clark's because, in the words of the Illinois Appellate Court, Ernest Clark's testimony placed Williams and A. D. Clark "in the station wagon with the stolen meat shortly after the burglary had taken place." *People v. Clark*, 42 Ill. App.3d 472, 355 N.E.2d 619, 622 (3d Dist.

1976). Appellate counsel did not advance the same claim on behalf of Otis Williams because counsel asserted that "it does not appear that, due to the introduction of [Williams'] prior judicial confession, he was substantially prejudiced by defense counsel's conflict of interest." Brief and Argument for Defendants-Appellants in *People v. Clark*, No. 74–C–1808, at 1 n.1.[6]

The state appellate court construed Illinois law to require that a defendant alleging incompetence of counsel must show actual incompetence and "substantial prejudice resulting, without which the outcome probably would have been different." *People v. Clark*, 355 N.E.2d at 621. As to A. D. Clark, the court concluded that "[w]hile he was prejudiced by the testimony of Ernest Clark . . ., it is doubtful, on the basis of the record, that without such testimony the outcome as to A. D. Clark would have been any different." *People v. Clark*, 355 N.E.2d at 622. The court therefore concluded that sufficient prejudice had not been shown. As to Otis Williams, the court stated, "[a]s appellate counsel admits, by reason of the prior judicial confession by Williams, it does not appear that the Williams' case was substantially prejudiced by counsel's alleged incompetence." *Id.* The court therefore affirmed the convictions of both A. D. Clark and Otis Williams.[7]

On December 23, 1980, A. D. Clark and Otis Williams filed a *pro se* petition for a writ of habeas corpus in the district court. The parties filed cross motions for summary judgment, and on November 3, 1981, the district court granted summary judgment for the petitioners.

---

**5.** At the sentencing hearing, the trial judge stated he believed Ernest J. Clark, in order to avoid any problems with his parole, had lied about the time he had seen and met the other two defendants. The judge remarked, "Perhaps you changed your story a little bit so your parole officer wouldn't be yanking you back on a parole violation. If you did that, you made a very serious mistake." R. 525.

**6.** In a separate trial for a murder apparently connected to the burglary, Williams admitted on the witness stand his complicity in the burglary.

**7.** The Illinois Appellate Court reversed Ernest Clark's conviction on sixth amendment grounds. The court concluded that the joint representation violated his constitutional rights because it would have been in Ernest Clark's best interest to have the confession of Otis Williams, which referred to A. D. Clark but not to Ernest, read to the jury with references to A. D. Clark intact. *Id.* Because of the requirements of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the references to A. D. Clark had in fact been deleted when the confession was read to the jury.

The district court, applying the standard recently formulated by the Supreme Court, noted that, absent a trial objection to ineffective assistance of counsel, the petitioners must establish an "actual conflict of interest adversely affecting his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). The district court found that the petitioners had met this burden of showing actual conflict, but that the Illinois Appellate Court denied relief in reliance on the improper legal standard requiring defendants to show resulting substantial prejudice, without which the outcome probably would have been different. Thus the district court accepted the state court's determination of the facts and applied the correct rule of law. The district court required the defendants to show a conflict of interest by their counsel which actually affected the adequacy of his representation. Based on that showing, the court held that the petitioners' sixth amendment rights had been violated.

Because of Otis Williams' alleged waiver on direct appeal of the ineffectiveness of counsel claim, the district court examined the standards for determining when a habeas petitioner waives his right to independent review of a claim in a federal court. The district court considered the impact of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), which bars federal habeas relief if there has been an unexcused failure to make a contemporaneous objection at trial as required by state law. The court held, however, that *Wainwright v. Sykes* did not bar relief in the instant circumstances. The court, therefore, concluded that both petitioners were entitled to raise the claim of ineffective assistance of counsel and that the convictions of both may be set aside.

Respondents appealed, claiming that there was no *actual* conflict of interest in defense counsel's representation of the petitioners and Ernest J. Clark because all three defendants had a consistent theory of defense. Respondents also contend that the district court erred in declining to apply to Otis Williams' sixth amendment claim the waiver doctrine of *Wainwright v. Sykes.*

## II.

The sixth amendment [8] guarantees a criminal defendant assistance of counsel which will not only satisfy a minimum standard of professional competency but also provide representation free of conflicting loyalties. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Jeffers*, 520 F.2d 1256 (7th Cir. 1975), *cert. denied*, 423 U.S. 1066, 96 S.Ct. 805, 46 L.Ed.2d 656 (1976); *United States ex rel. Robinson v. Housewright*, 525 F.2d 988 (7th Cir. 1975). Although, in the absence of an objection at trial, the trial court need not conduct, *sua sponte*, an inquiry into potential conflicts which are not readily apparent, a defendant who shows that an actual conflict of interest affected the adequacy of his representation may obtain relief even in the absence of a showing of resulting prejudice. *Cuyler v. Sullivan*, 446 U.S. 335, 347, 349–50, 100 S.Ct. 1708, 1718–19, 64 L.Ed.2d 333 (1980). Indeed, in *Holloway v. Arkansas*, 435 U.S. 475, 489, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978), the Supreme Court expressly concluded that assistance of counsel who can effectively act on a defendant's behalf is "among those constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." *Accord Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). Thus, as the district court noted, the Illinois Appellate Court applied an improper legal standard in denying petitioners relief because it found that "the admittedly prejudicial testimony" was not sufficiently prejudi-

---

**8.** "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence." *U.S.Const.* amend. VI.

cial to clearly change the outcome of the trial. The district court correctly found no unresolved issues of fact, *see Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), and applied the constitutional standard for conflicts of interest which actually affect the adequacy of counsel's representation. *Cuyler v. Sullivan*, 446 U.S. at 348, 100 S.Ct. at 1718.

In our recent decision, *Dently v. Lane*, 665 F.2d 113, 116 (7th Cir. 1981), we noted that *Cuyler* raises three questions for a court to consider: (1) whether there was joint representation of co-defendants, (2) whether there was an actual conflict of interest between co-defendants, and (3) whether the alleged conflict affected the adequacy of legal representation. In the instant case, all three questions must be answered in the affirmative.

■ The first part of *Dently* is satisfied because petitioners Otis Williams and A. D. Clark were represented by the attorney who also represented Ernest Clark. The second prong of *Dently*, actual conflict of interest, is also evident. As the Illinois Appellate Court found, and the district court agreed, Ernest Clark's testimony was adverse to petitioners. We agree with the district court's conclusion that the entire thrust of Ernest Clark's direct examination was designed to separate him from the action of the petitioners, to show that he had nothing to do with the "suspicious situation" and to establish that he had met the petitioners *after* they had committed the crime in question. Thus the testimony of Ernest Clark was not only inconsistent with the defense of Otis Williams and A. D. Clark but it tended to *inculpate* them while it *exculpated* Ernest Clark.

We cannot accept the State's contention that Ernest Clark's testimony was part of a consistent defense for all three defendants, *i.e.*, that the defendants were in possession of a quantity of meat but had not stolen it. The State argues that Ernest Clark's direct examination, in which he testified that he was picked up by petitioners *before* 1:00 a. m., is consistent with the defense that petitioners possessed a carload of meat *before* the theft supposedly occurred, thus contradicting the State's witness who saw a car parked near the store sometime after 1:00 a. m. However, petitioners' counsel, on direct examination of Ernest Clark, not only failed to emphasize the timing of the encounter but he also failed to mention this supposedly crucial piece of evidence in his closing argument. R. 437–49. Rather, in closing argument the defense counsel stated that Ernest Clark was picked up by A. D. Clark and Williams "in the early morning hours." R. 411. Moreover, at the sentencing hearing, the trial judge expressed his belief that Ernest Clark had lied about the timing of his encounter with the petitioners to show compliance with the conditions of his parole, which required that he be home by 1:00 a. m.

Given Ernest Clark's motive for fabricating the time that petitioners picked him up, it was hardly in the petitioners' best interests to have Ernest Clark testify that he saw the petitioners with a large quantity of meat on the date of the theft. Indeed, the effect of Ernest Clark's testimony was to buttress the evidence of petitioners' guilt rather than to present a defense for all three since it admittedly placed all three defendants with meat—the item allegedly taken in the burglary. It is clear to us from the record that there was an actual conflict of interest between Ernest Clark and the petitioners, making an evidentiary hearing on this question unnecessary.[9]

---

9. *Dently v. Lane*, 665 F.2d 113 (7th Cir. 1981), in which this court reversed a denial of habeas corpus relief and ordered the district court to conduct an evidentiary hearing, is not authority for the proposition that an evidentiary hearing is required in the instant case. In *Dently*, there was no state court record with respect to the constitutional claims on which the habeas court could rely, and the record from the trial left many factual issues regarding the constitutional claim unresolved. Here, not only did the state appellate court make all of the necessary findings, but all factual issues can be resolved on the face of the record.

The State argues that only by placing the trial attorney on the stand to testify can conflict of interest be determined. We find such a procedure unnecessary when the existence of

■ Responding to the third question in *Dently*, it is equally apparent that the adequacy of counsel's representation was affected by the conflict. As the district court noted, where two or more defendants have inconsistent stories relating to the crime charged, joint representation is impermissible. *See Turnquest v. Wainwright*, 651 F.2d 331 (5th Cir. 1981). This is particularly true where one of the defendants cannot be effectively prevented by counsel from taking the stand even though prejudice to a co-defendant may result, or where counsel is precluded from cross-examining or impeaching a witness because of conflicting loyalties. *See Ross v. Heyne*, 638 F.2d 979 (7th Cir. 1980); *United States v. Gaines*, 529 F.2d 1038 (7th Cir. 1976). In the instant case, counsel could neither impeach the testimony of Ernest Clark on behalf of the petitioners, nor prevent Ernest Clark from testifying adversely to the petitioners. We need not speculate further about counsel's trial tactics as it is evident that a conflict of interest existed when counsel was faced with the adverse testimony of one co-defendant which implicated, albeit by inference, the other co-defendants. We conclude that counsel's joint representation violated petitioners' sixth amendment rights.

### III.

Respondents also assert that Otis Williams waived review of the conflict of interest issue on direct appeal, and that therefore *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), bars petitioner Williams from obtaining federal habeas review of his sixth amendment claim. In *Wainwright v. Sykes*, the habeas petitioner failed to comply with a state procedural rule requiring him to challenge the admissibility of his confession at trial and was thus barred under state law from raising this challenge on direct appeal or in state collateral proceedings. Because of the petitioner's failure to comply with this state procedural rule, the Court held that the petitioner was also barred from raising the same claim in federal habeas proceedings unless he could show cause why he failed to make a contemporaneous objection at trial as required by state law as well as *prejudice* resulting from the alleged constitutional error. *See also Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976).

■ This court has recently held (in the context of a 28 U.S.C. § 2255 proceeding) that the same cause-prejudice standard applies to the failure to appeal as applies to failure to make contemporaneous objection at trial. *United States v. Norris*, 687 F.2d 899 (7th Cir. 1982)[10]; *see United States v. Frady*, —— U.S. ——, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). We believe that this principle governs habeas corpus proceedings for state prisoners to the same extent it would control federal prisoners seeking 28 U.S.C. § 2255 relief, as in *Norris*.[11] We do not understand Otis Williams to argue, nor has the district court held in the instant case, that Williams has met the cause-prejudice standard (which, of course, was only very recently announced in *Norris*).

---

an actual conflict is readily apparent from the record. Indeed, the problems connected with placing counsel on the stand in order to assess his trial tactics in the related context of an ineffective assistance of counsel claim was demonstrated in *United States v. DeCoster*, 624 F.2d 196, 272–75 (D.C.Cir.1979) (en banc) (Bazelon, J., dissenting). *See also Cuyler v. Sullivan*, 446 U.S. 335, 354, 357–58, 100 S.Ct. 1708, 1722–23, 64 L.Ed.2d 333 (1980) (Marshall, J., concurring in part and dissenting in part).

**10.** *But see* concurring opinion of Cudahy, J., in *United States v. Norris*, 687 F.2d 904.

**11.** We note that petitioners, although unable to specifically address our opinion in *Norris*, have presented plausible arguments to the effect that the policies of *Wainwright v. Sykes* are inapplicable to a sixth amendment conflict of interest claim. It is not necessary for us to explore this argument in depth although it may have considerable merit. We would point out, however, that in the instant case, petitioners were represented by *different* counsel on appeal than at trial. This case is different from one where the same counsel represented petitioners at trial and on appeal. In the latter case, there is a better argument for not requiring the petitioner to have raised his conflict of interest claim on appeal.

■ But we do not believe this deficiency is controlling here, since in the instant case the state may not rely on waiver. The policies underlying deference to a state procedural rule are inapplicable where the state itself does not apply or enforce the rule. When a state court does not rely on a waiver of a constitutional claim, but goes beyond the alleged waiver to rule on the merits, a federal court can also reach the merits of the claim without the cause-prejudice standard of *Wainwright v. Sykes* being met. *See County Court of Ulster County v. Allen*, 442 U.S. 140, 152–53, 99 S.Ct. 2213, 2222, 60 L.Ed.2d 777 (1979); *Franks v. Delaware*, 438 U.S. 154, 161–63, 98 S.Ct. 2674, 2679–80, 57 L.Ed.2d 667 (1978); *Washington v. Watkins*, 655 F.2d 1346, 1368, *reh. denied*, 662 F.2d 1116 (5th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982); *Thomas v. Blackburn*, 623 F.2d 383, 386 (5th Cir. 1980), *cert. denied*, 450 U.S. 953, 101 S.Ct. 1413, 67 L.Ed.2d 380; *Gale v. Harris*, 450 F.Supp. 375, 377 (S.D.N.Y.), *rev'd on other grounds*, 580 F.2d 52 (2d Cir. 1978), *cert. denied*, 440 U.S. 965, 99 S.Ct. 1515, 59 L.Ed.2d 781 (1979).[12]

■ Respondents do not dispute that A. D. Clark's claim of conflict of counsel's loyalty in the instant case was addressed by the state appellate court on the merits. Because Otis Williams' joint representation claim is identical to A. D. Clark's claim, the issue was briefed before the state appellate court in a joint brief filed on behalf of both petitioners. Indeed, even though appellate counsel in a footnote in his brief purported to waive the claim as to Williams,[13] the state appellate court specifically addressed Williams' claim and dismissed it on improper legal grounds, agreeing with defendants' counsel that "by reason of the prior confession by Williams, it does not appear that Williams' case was substantially prejudiced by counsel's alleged incompetence." *People v. Clark*, 42 Ill.App.3d 472, 355 N.E.2d 619, 622 (3d Dist. 1976). In addition, the court stated that the testimony of Ernest Clark was "obviously adverse to defendants A. D. Clark and Williams." *Id.* Therefore, the state appellate court found the facts necessary to the resolution of Otis Williams' sixth amendment claim but reached an incorrect conclusion by following Williams' counsel's erroneous assessment of the potential constitutional claim.[14]

Thus the state court system was not deprived of the opportunity to analyze the constitutional question. The state appellate court not only considered a claim in all respects identical to Williams' claim, but also indicated that the only way to distinguish Williams' claim from that of A. D. Clark was by applying an erroneous legal standard requiring a showing that prejudice resulted from the conflict. This "harmless error" test incorrectly placed on the defend-

12. The instant case is thus distinguishable from *Engle v. Isaac*, —— U.S. ——, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). *Engle* was a consolidated appeal in which three defendants challenged the constitutionality of jury instructions with respect to the burden of proving self-defense. None of the defendants objected to the jury instructions at trial, thus ostensibly failing to comply with the Ohio rule mandating contemporaneous objections. One of the three (Isaac) did raise the issue in the state appellate court, but that court refused to consider the issue, because of the failure to raise it below. The Supreme Court held that all the defendants were barred from asserting the constitutional claim in a habeas corpus proceeding, because of their failure to object to the instructions at trial. *See* 102 S.Ct. at 1570. Although the state courts required criminal defendants to bear the burden of proving self-defense, the Supreme Court pointed out that a number of precedents had already established a sufficient basis for the defendants'

constitutional claim that placing such a burden on the defendants would violate the due process clause. Therefore, the defendants did not lack the tools to construct their constitutional claim.

In the instant case, unlike *Engle,* counsel raised the claim in question here in the state appellate court but then, purportedly applying an incorrect legal standard, waived it as to one of the defendants. The state court nonetheless considered defendant Clark's identical claim on the merits and ruled on Williams' waived claim as well.

13. "This issue is not raised as to defendant/appellant Otis Williams because it does not appear that, due to the introduction of his prior judicial confession he was substantially prejudiced by defense counsel's conflict of interest." Petitioner's State Appellate Brief at 8 n.1.

14. The incorrect analysis, of course, consisted of applying a requirement that prejudice resulting from the actual conflict of interest be shown.

ant the burden of establishing that the outcome would have been different without Ernest Clark's testimony. Comity and federalism interests require respect for state procedural rules which meet the requirements of due process and serve legitimate state judicial goals. As the district court noted, however, no general state purpose is furthered [15] by precluding Williams from raising a serious constitutional error, which goes to the fundamental fairness of the trial, where the state has in fact ruled on the merits of the claim despite the appellate counsel's express waiver of the claim on appeal with respect to Williams. Where the state courts have addressed the merits of a serious constitutional claim, waiver ceases to be a relevant consideration.

### IV.

For the reasons set forth above, we affirm the order of the district court granting summary judgment to petitioners.

AFFIRMED.

---

**15.** The purpose of a waiver bar as related to the instant case is not to protect the opposing party but rather to promote comity and efficiency between the state and federal courts by allowing state courts the first opportunity to correct alleged errors. *See generally Stone v. Powell*, 428 U.S. 465, 492–94, 96 S.Ct. 3037, 3051–52, 49 L.Ed.2d 1067 (1976); *United States ex rel. Maxey v. Morris*, 591 F.2d 386, 388–89 (7th Cir. 1979).