**UNITED STATES of America ex rel. Hillis GOODMAN, Jr., Plaintiff,**

**v.**

**Michael LANE, et al., Defendants.**

**No. 83 C 5556.**

United States District Court, N.D. Illinois, E.D.

Oct. 22, 1984.

Scott Graham, Bradley S. Bridge, Chicago, Ill., for plaintiff.

Jack Donaltelli, Asst. Atty. Gen., of Ill., Chicago, Ill., for defendants.

## MEMORANDUM OPINION
## AND ORDER

GETZENDANNER, District Judge:

This petition for a writ of habeas corpus, 28 U.S.C. § 2254, is before the court on the motion for summary judgment of respondents Michael Lane and Richard DeRobertis. Petitioner Hillis C. Goodman, Jr. is an inmate at Stateville Correctional Center where he is serving terms of 25 years for murder and 15 years for armed robbery. Goodman was found guilty of these charges by a jury on April 24, 1980 and the presiding judge denied the motion for new trial on April 28, 1980. The Illinois Appellate Court confirmed the convictions and sentence on September 17, 1982. Goodman's petition for leave to appeal was denied by the Illinois Supreme Court on February 1, 1983. Goodman thereafter filed this petition seeking relief based on two alleged constitutional errors in his trial.

In their Answer and Motion for Summary Judgment, respondents assert, and the court agrees, that Goodman has exhausted his remedies before the Illinois state courts. Respondents argue, however, that the alleged errors, considered on the merits, do not entitle Goodman to habeas corpus relief. They further claim that Goodman's failure to object to the alleged errors both at trial and in post-trial motions constitutes waiver under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The court agrees that Goodman has waived his right to raise these issues in this petition, and hence grants respondents' motion for summary judgment in full.

### Factual Summary

Goodman contends that he was denied his right to a fair trial and adequate representation of counsel when his attorney, Mr. Akim Gursel, was escorted into the courtroom in handcuffs on the first day of Goodman's trial. The trial transcript reveals that on April 21, 1980, the presiding judge discussed with the venire members a "slight problem" that had occurred in the hallway just before the venire members were brought into the courtroom:

Mr. Gursel had a client elsewhere in the building this morning who wanted his presence, he has a client here who demands his presence. The distinguished Jurist before whom he first appeared this morning ordered him to remain down there and he complied with that order to remain where he was.

I did not order him to come up here, I sent my bailiff for him. Deputy Sheriff Holmes went and got him and to impress upon the minds of those in attendance that we mean business Mr. Holmes put handcuffs on him and brought him up here, so here he sits. He is somewhat despondent but he will get over it.

(Transcript 370.) It is not clear how many, if any, of the venire members saw the incident, although they all apparently were informed of the incident through the court's comments. The court explained at length the trivial nature of the episode. (Tr. 368–371.) A reading of the transcript reveals that the episode is consistent with the court's often humorous courtroom style. Gursel did not object to the incident, either at trial or in his general post-trial motion.

Goodman also contends that the introduction of hearsay statements violated his right to confrontation of witnesses. Goodman's younger brother, Bobby Goodman, and his former girlfriend, Karen Pugh, both gave statements to police officers that Goodman committed the murder and armed robbery with which he was charged. The two investigators that received these communications testified at trial and on re-re-direct and re-direct examination described the content of those statements to the jury. As above, Gursel did not object to the introduction of the hearsay evidence either at trial or in his motion for new trial.

Goodman raised these issues on appeal, claiming that they were not waived by failure to object, one, because Goodman's non-specific motion for new trial reserved all

errors, and two, because Illinois's "plain error" exception to waiver allowed review. The Illinois Appellate Court found both of these errors waived.

## Waiver

### Illinois Procedural Barriers

■ Illinois law imposes two procedural hurdles on the preservation of trial errors for appeal. First, failure to object at trial generally waives error on appeal. *People v. Carraro*, 77 Ill.2d 75, 31 Ill.Dec. 817, 394 N.E.2d 1194 (1979). This is so even if the error is of constitutional dimension. *People v. Hyche*, 77 Ill.2d 229, 32 Ill.Dec. 893, 396 N.E.2d 6 (1979).

■ In addition to this "contemporaneous objection" rule, Illinois imposes a requirement that errors be preserved in a post-trial motion. Under Ill.Rev.Stat. ch. 38, ¶ 116–1(b), a defendant must file a written motion for new trial within 30 days of verdict. Issues not raised therein cannot be urged as reasons for dismissal on appeal. *People v. Pickett*, 54 Ill.2d 280, 296 N.E.2d 856 (1973). A non-specific oral motion may be made at the close of trial if the state does not object, although it is unclear what errors such a motion preserves. The most recent Illinois authority holds that such a motion preserves errors "properly preserved in the record." *People v. Pearson*, 88 Ill.2d 210, 58 Ill.Dec. 739, 430 N.E.2d 990 (1981); *People v. Denby*, 102 Ill.App.3d 1141, 58 Ill.Dec. 475, 430 N.E.2d 507 (5th Dist.1981); *People v. Robinson*, 92 Ill.App.3d 972, 48 Ill.Dec. 520, 416 N.E.2d 793 (5th Dist.1981); *People v. Harrawood*, 66 Ill.App.3d 163, 22 Ill.Dec. 899, 383 N.E.2d 707 (5th Dist.1978). This court is uncertain whether this exception includes errors to which no objection was made at trial. There clearly exist issues that are not preserved by a non-specific post-trial motion because of failure to object at trial. *See e.g., People v. Denby, supra.*

■ Even if an issue is waived under the above procedural rules, a reviewing court may review the merits of a claim under Illinois's "plain error" exception. Ill.Rev. Stat. ch. 110A, ¶ 615(a); *People v. Bennie-*field, 88 Ill.App.3d 150, 43 Ill.Dec. 455, 410 N.E.2d 455 (1st Dist.1980).

### Illinois Appellate Decision

In the present case, Goodman presented the two claims now before the court to the Illinois Appellate Court. The state responded by arguing both the merits and the waiver of the claims. The Court responded to the handcuffing incident as follows:

We first comment that defense counsel did not object, which would generally act as a waiver of this issue. [Citations omitted.]

Moreover, this is not an appropriate case to invoke the plain error rule [citation omitted] in light of the overwhelming evidence of defendant's guilt. Additionally, the trial court explained in detail to the jury the necessity of such action and admonished any juror that may have witnessed the incident to disregard it. Where it does not appear evident in the record that defendant was prejudiced by these remarks, a judgment will not be reversed. [Citation omitted.]

*People v. Goodman*, 108 Ill.App.3d 1209, 68 Ill.Dec. 583, 446 N.E.2d 317 (Ill.App. 1st Dist. Sept. 17, 1982) (Order Disposing of Appeal Under Supreme Court Rule 23). This language clearly indicates that the Illinois Appellate Court determined, first, that Goodman waived appeal of this issue, and second, that Goodman could not demonstrate that review should be had under the ¶ 615(a). Goodman counters that the last two sentences constitute a decision on the merits.

With respect to the introduction of hearsay, the Court first described at length the facts concerning that testimony. It then briefly explained Illinois law regarding the admission on re-direct examination of inadmissible evidence. Under those Illinois rules, evidence initially inadmissible may become admissible when the objecting party interjects issues concerning that evidence into a case. The Court indicated that the hearsay evidence in question was "made an issue in the case by defense

counsel on cross-examination." *Id.* at 13. Finally, the Court explained:

> Moreover, defendant failed to object to the testimony in question, thus waiving this as an issue for consideration on review. [Citation omitted.] Nor can plain error be asserted unless it is clear from the record that an error affecting substantial rights was committed. [Citation omitted.] The evidence against defendant is overwhelming in view of his signed confession admitting to the homicide. Thus, in light of the circumstances, it was not error to admit these statements into evidence.

*Id.* at 14. The parties dispute whether the Illinois Court considered the merits of these two claims, or whether it applied a procedural bar to such consideration. Respondents contend that the discussion of Illinois law is included only as part of the Court's assessment of the "plain error" exception. It is clear, however, that a procedural bar was at least an alternative holding.

*Federal Law of Waiver*

■ In *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the petitioner raised claims on which the state court had not been given an opportunity to rule because such claims had not been presented to that court in the manner prescribed by the state's procedural rules. In that case, state law required any objections to the admission of a confession to be made at trial or not at all. The *Sykes* Court held that such a procedural bar "amount[s] to an independent and adequate state procedural ground which would have prevented direct review here." Before a petitioner may raise a claim that was not presented to the state courts, therefore, the petitioner must demonstrate both "cause" and "prejudice" attendant to the state procedural waiver. *Id.* at 87, 97 S.Ct. at 2506. This rule was recently reiterated in *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), where the Court held that the cause and prejudice test applies to issues not presented to the state courts for review, even where the constitutional issue

thereby waived relates to the truthfinding function of the trial. *Id.* at 129, 102 S.Ct. at 1572.

The Seventh Circuit has held that failure to raise an issue on appeal would bar federal habeas relief as well unless the *Sykes* cause and prejudice test were met. *Norris v. United States*, 687 F.2d 899, 903 (7th Cir.1982); *United States ex rel. Veal v. DeRobertis*, 693 F.2d 642 (7th Cir.1982). *Veal* concerned a § 2254 petition raising claims that were denied by the Illinois Appellate Court on both procedural and substantive grounds. 693 F.2d at 650. Because the procedural bar was one of the express reasons behind the Court's holding in denying the reversal, the Seventh Circuit found that the case "was decided in part on an independent state procedural ground to which *Sykes* and *Isaac* apply." *Id.* It therefore remanded the case to the district court to determine if cause and prejudice could be demonstrated.

The *Veal* Court reiterated the holding in *United States ex rel. Williams v. Franzen*, 687 F.2d 944 (7th Cir.1982), that where a state court ignores procedural bars and decides an issue on the merits, the federal court must review the merits in the habeas corpus petition as well. *Id.* at 951. According to *Franzen*,

> [t]he policies underlying deference to a state procedural rule are inapplicable where the state itself does not apply or enforce the rule. When a state court ... goes beyond the alleged waiver to rule on the merits, a federal court can also reach the merits of the claim without the cause-prejudice standard being met.

*Id.* The Court distinguished *Franzen* by noting that in *Veal*, the Illinois Appellate Court expressly found that a procedural bar was one of the reasons for its holding.

Procedural bars were at least the alternative bases for denying the relief requested on appeal in this case. In discussing the procedural waiver, the reviewing court also denied the applicability of the Illinois "plain error" exception. Case law establishes that the denial of such an exception also

constitutes an independent and adequate state procedural bar to collateral attack.

*Hockenbury v. Sowders,* 620 F.2d 111 (6th Cir.1980) *(Hockenbury I), reh'g en banc denied,* 633 F.2d 443 (6th Cir.1980) *(Hockenbury II), cert. denied & reh'g denied,* 451 U.S. 933, 101 S.Ct. 2011, 68 L.Ed.2d 320 (1981), examined the state court's "contemporaneous objection" rule, which, as in Illinois, allowed review of waived issues under a "manifest injustice" exception. In *Hockenbury I,* the Sixth Circuit held that the federal district court could not make an independent assessment of "plain error," but must defer to the state court's decision regarding its contemporaneous objection rule and the exceptions thereto. 620 F.2d at 114. The Court went on to examine whether the state courts reached the merits of the federal claims presented in the habeas writ to determine whether the procedural default was waived. *Hockenbury II* stresses that the federal courts should not independently review whether a particular trial error falls within a state's "plain error" exception to procedural barriers.

■ Other courts have agreed with the approach of the Sixth Circuit regarding so-called "plain error" review. In *Runnels v. Hess,* 653 F.2d 1359 (10th Cir.1981), the Court followed the *Hockenbury* decisions in determining the deference to pay to the state court's finding that the waived trial error was not reviewable under that state's "fundamental error" exception to waiver. *Id.* at 1363. Hence, a decision not to review the merits of the claim under a "plain error" exception to procedural waiver is an independent and adequate state ground precluding review of the underlying issue in a petition for a writ of habeas corpus. *See United States ex rel. Huckstead v. Greer,* 737 F.2d 673, 677 (7th Cir.1984).

■ A finding of procedural waiver, however, does not end the inquiry. It is clear that when a state court declines to apply its procedural waiver rules, the federal court on collateral review need not be constrained thereby. *Francis v. Henderson,* 425 U.S. 536, 542 n. 5, 96 S.Ct. 1708,

1711 n. 5, 48 L.Ed.2d 149 (1975); *Franzen, supra.* Hence, a question is raised as to whether a state has rendered a decision based on the procedural rule such that *Sykes* and its progeny apply. Goodman argues here that the appellate court reviewed his claims on the merits, thereby waiving the procedural barriers to appellate review.

In *United States ex rel. Caruso v. Zelinsky,* 689 F.2d 435 (3d Cir.1982), the Court reviewed the ways in which federal courts have interpreted state decisions in which the basis for the holding is unclear. *Id.* at 439–40. Some courts deem the discussion of the merits to be dictum and find that the decision was reached solely through application of procedural rules. Others, like that in *Hockenbury I,* decline to review the merits of the federal claim where the procedural barrier was a "substantial basis" for the state court's ruling. In *Hockenbury I,* the Court examined the underlying decision and found that, as in this case, the decision "made a cursory review of petitioner's substantive claim." It found that the review of the merits was necessary in order to assess the applicability of the "manifest injustice" exception, and that the procedural waiver was therefore a substantial basis for denial of relief. 620 F.2d at 115. *Accord Dietz v. Solem,* 640 F.2d 126, 131–32 n. 1 (8th Cir.1981). Finally, some circuits require the state ruling to rely exclusively on the procedural default before the *Sykes* test must be met. *Rogers v. McMullen,* 673 F.2d 1185, 1188 (11th Cir. 1982), *cert. denied,* 459 U.S. 1110, 103 S.Ct. 740, 74 L.Ed.2d 961 (1983); *Thompson v. Estelle,* 642 F.2d 996, 998 (5th Cir.1981); *Bradford v. Stone,* 594 F.2d 1294, 1296 n. 2 (9th Cir.1979).

■ The Seventh Circuit clearly held in *Veal* that where the state court relied on substantive and procedural grounds in the alternative, cause and prejudice must be shown before review of the federal claims could be had. *Accord Jentges v. Milwaukee County Circuit Court,* 733 F.2d 1238, 1243 n. 1 (7th Cir.1984); *Zelinsky,* 689 F.2d at 440; *Phillips v. Smith,* 717 F.2d 44,

48–50 (2d Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1287, 79 L.Ed.2d 689 (1984). Since relief from both errors in this case was denied at least alternatively on state procedural grounds, review in this court has been waived. Alternatively, the cursory review of the merits of the claims, coupled with the lack of any federal citation, support respondents' claim that there was no holding on the merits, and the procedural waiver constituted the sole reason for denial of relief. These holdings require satisfaction of the *Sykes* cause and prejudice test.

### Cause and Prejudice

Goodman initially did not articulate satisfaction of the *Sykes* test. In his responding memorandum, he argues only that Gursel was intimidated by the trial court into not raising appropriate objections. Goodman has raised no other reason for the defaults.

The exact meaning of "cause" was left open by the Court in *Sykes,* although it noted:

> Whatever precise content may be given those terms by later cases, we feel confident in holding without further elaboration that they do not exist here. Respondent has advanced no explanation whatever for his failure to object at trial....

433 U.S. at 91, 97 S.Ct. at 2508. There, inculpatory statements of the petitioner were admitted without objection that they may have been obtained in violation of petitioner's constitutional rights. In *Isaac,* the Court found that failure to raise a constitutional claim because of perceived futility alone cannot constitute cause. 456 U.S. at 131 n. 36, 102 S.Ct. at 1573 n. 36. However, an explanation of the content of the "cause" test remains elusive.

Recent decisions in this circuit have similarly failed to provide guidance on the meaning of "cause." *See Jentges,* 733 F.2d at 1244; *Weber v. Israel,* 730 F.2d 499, 504 (7th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 167, 83 L.Ed.2d 103 (1984); *Sullivan v. Fairman,* 731 F.2d 450 (7th Cir.1984). This Circuit has not yet decided whether

ineffective assistance of counsel, short of that necessary to satisfy the Sixth Amendment standard, may satisfy the "cause" part of the test. *Greer,* 737 F.2d at 677. (Goodman has never raised a claim of ineffective assistance of trial or appellate counsel.) The court will assume for purposes of this motion that ineffective assistance of counsel may constitute "cause."

### *Hearsay Testimony*

The court's review of the record establishes that Goodman cannot demonstrate "cause" for failing to object to the introduction of the hearsay evidence by Officers Baranowski and Toenings. These officers had taken statements by Goodman's brother Bobby and his girlfriend Karen Pugh that Goodman committed the armed robbery and murder with their participation. According to the transcript, before the officers testified, counsel for Goodman and the state discussed with the court the potential problems with the expected testimony. The parties agreed that the officers could testify to a prior robbery accusation against Goodman on the condition that the testimony also include the fact that no charges were brought. (Tr. 680–681.) This accusation was brought by Bobby against Goodman quite near in time to Bobby's statement that Goodman committed the charged armed robbery and murder. After checking Goodman's alibi regarding Bobby's first allegation, it was determined that no charges relating thereto could be lodged.

After agreeing to mention that no charges were brought relating to the first robbery accusation, the prosecution then brought up the issue of hearsay statements by Bobby and Karen Pugh, indicating to the court that introduction of that evidence, probably not admissible, was not planned. The prosecution indicated that time was needed in which to educate the witnesses not to mention the hearsay. (Tr. 682–685.) Throughout this discussion, Gursel never stated that he objected to admission of the testimony. In fact, he seems at one point to indicate that he did not mind "telling about a homicide." (Tr. 682.)

At trial, Gursel cross-examined the two officers vigorously. His strategy was clearly directed to establishing that Goodman's brother Bobby (who could not be located) committed the murder and then implicated Goodman. (See Tr. 757–58, 760, 763–64, 858–59, 879–81, 885–86, 924–25, 930, 1035.) Often his questions made little sense without the information that Bobby had implicated Goodman in the charged crimes. Bobby's accusation against Goodman was presented as just another false accusation against his brother. (E.g., Tr. at 1035.) Gursel examined the family quarrels and also sought to paint Bobby as someone out to get his brother. It is clear that Gursel knew how to object to testimony, since he frequently objected to testimony, and made objections during the testimony now before the court. (E.g., Tr. at 889.)

■ The court finds, therefore, that Gursel's failure to object to the hearsay testimony was most likely express, a "deliberate bypass" as that term is defined in *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). This conclusion is supported by several facts in the record. First, Gursel expressed little or no interest in the prosecution's concern with the hearsay statements. Second, Gursel's object was to explain away Goodman's detailed confession. (The admissibility of the confession was challenged in a lengthy suppression hearing, was admitted by the trial court, and was upheld on appeal.) Goodman claimed at trial that the police officers put words in his mouth, and it is consistent with this theory that the details of the crime that were "fed" to Goodman were obtained by Bobby or Pugh. Third, Gursel made no objection to the hearsay testimony and used it in his own argument. Hence, the failure to object was likely express trial strategy, and "cause" has not been established. Even were the testimony not an express part of Gursel's trial strategy, it was at least consistent with his own defense.

It could be argued that this strategy was so wrong-headed as to constitute ineffective assistance of counsel and thus "cause" for the procedural default. However, given Goodman's confession and Bobby's prior false accusation against Goodman, the court is unconvinced that such a strategy alone demonstrates ineffective assistance of counsel.

The court also rejects the claim that Gursel was intimidated into not making objections. A thorough reading of the trial transcript reveals frequent instances in which Gursel made objections and argued vigorously with witnesses, in closing argument, and even with the court. There is simply no support for the claim that the trial court's attitude to Gursel, evidenced by the handcuffing incident, prevented aggressive representation by Gursel.

### Handcuffing Incident

■ The record also fails to reveal cause for the failure to object to the handcuffing of Gursel outside of the courtroom at the time of the voir dire. As explained above, there is no support for Goodman's claim that Gursel was intimidated by the trial court after the incident, since a reading of the transcript demonstrates that Gursel's representation was competent and aggressive. However, even were Gursel so chastened by the incident that directly thereafter he was incapable of objecting, prejudice has not been shown. It is unclear whether any jurors even saw the incident, and the court's lengthy explanations thereafter substantially corrected the effect it could have had. Moreover, the trial court's humorous courtroom style do much to put the event in perspective as at most a type of practical joke, however inappropriate. Third, Gursel's competent courtroom behavior and his clear lack of intimidation by the incident lessened any prejudicial impact. Finally, the evidence against Goodman, namely a signed, detailed confession, further supports the court's finding that prejudice did not result from this incident.

### Conclusion

Based on the waiver doctrine of *Wainwright v. Sykes*, the petition for a writ of habeas corpus is denied in full without a hearing.