**UNITED STATES of America ex rel. Miles COLE, Petitioner-Appellant,**

v.

**Michael LANE, Director of Department of Corrections, State of Illinois, Respondent-Appellee.**

No. 83–2200.

United States Court of Appeals, Seventh Circuit.

Argued April 2, 1984.

Decided Jan. 7, 1985.

---

William A. Von Hoene, Jr., Jenner & Block, Chicago, Ill., for petitioner-appellant.

James E. Fitzgerald, Asst. Atty. Gen., Chicago, Ill., for respondent-appellee.

Before CUDAHY, COFFEY, Circuit Judges, and GIBSON, Senior Circuit Judge.*

COFFEY, Circuit Judge.

Miles Cole [1] appeals from an order dismissing his petition for a writ of habeas

---

\* The Honorable Floyd R. Gibson, Senior Circuit Judge for the United States Court of Appeals for the Eighth Circuit, is sitting by designation.

**1.** Cole was charged, tried, and convicted under the name Gregory DeBerry. His state court appeal also was taken under that name. The court has not been provided an explanation for the use of two names. In this opinion, the court will use the name "Cole."

corpus, denying his motion for summary judgment, and granting appellee Michael Lane's motion for summary judgment. Cole and his co-defendant, Bobby Cade, were charged in a two-count information with the crimes of armed robbery and possession of codeine and were convicted of armed robbery in a jury trial in the Circuit Court of Cook County, Illinois. Cole and Cade were jointly represented [2] by two assistant public defenders from the Cook County Public Defender Office. Cole argues that a police officer testifying as a prosecution witness allegedly conveyed the substance of the co-defendant's out-of-court statement accusing Cole of committing the armed robbery. Cole asserts that he was denied his right to confrontation because he could not call his co-defendant as a witness to question him about his statement to the police. Additionally, Cole argues that he was denied effective assistance of counsel because his counsel, who also represented his co-defendant, could not attempt to discredit the allegedly incriminating statement of his co-defendant without violating his duty of loyalty to the co-defendant. Finally, Cole argues that the defenses of the two defendants were antagonistic; thus, joint and co-representation by the two public defenders also denied Cole his right to effective assistance of counsel. The argument that the joint representation was impermissible because of antagonistic defenses was neither raised in the trial court, the Illinois Court of Appeals nor the district court, but was raised for the first time in this court. We affirm.

## I.

The testimony at the trial in the Circuit Court of Cook County, Illinois established the following scenario of an armed robbery in Chicago, Illinois. On January 20, 1979, at approximately 10:40 p.m., John Brown, his wife, Bequethal, and their friends, Pearly Smith and Jeremiah Wilson, drove to an apartment building at 227 North Kilbourn Street in Chicago to meet Bequethal Brown's cousin. As their car approached the apartment building, the occupants of the car noticed three men standing on the corner. While the others waited in the car, John Brown entered the building and was followed by two of the men previously observed on the corner. One of the men ordered Brown to walk down the unlighted hallway to an illuminated landing at the top of the first flight of stairs. When Brown reached the landing Bobby Cade pointed a gun at him while the other unarmed assailant, Cole, removed eighteen or twenty dollars from Brown's left pants pocket. Cade then removed approximately one-hundred-ten or one-hundred-fifteen dollars from Brown's other pocket.

After an intensive police search of the area immediately after the armed robbery, the police apprehended the two suspects at the West Lane Hotel,[3] a short distance away. When the police knocked on the door of the apartment, Cole and Cade jumped from the second story window to the snow bank below and were arrested. A third man was in the apartment when the police entered but was released without being arrested. After a search of the area, the Chicago Police recovered two grocery bags containing a total of fifty-seven bottles of codeine in the snow bank below the apartment window where Cole and Cade had landed. A search for the gun used in the holdup proved to be unsuccessful.

In an answer to a pretrial discovery motion, the state disclosed that on the night of the armed robbery, Cole and Cade gave oral statements to the police after being advised of their rights. Both defendants admitted to being present at the scene of the crime, but denied being armed with a

---

**2.** The two public defenders did not each separately represent a single client; rather, each public defender jointly participated in the defense of the two defendants, Cole and Cade. Although "joint representation" usually refers to the situation in which one attorney represents two or more defendants, we use the term in this highly unusual and ethically questionable situation in which two attorneys co-represented both defendants.

**3.** The West Lane Hotel, despite its name, apparently is an apartment house.

gun or taking money, and each claimed that the other defendant had the gun and had relieved Brown of his money. Before trial, the prosecutor and the assistant public defenders assigned to represent Cole and Cade attempted to avoid the possibility that the witness would recount the defendants' statements accusing each other of committing the armed robbery by agreeing to redact[4] the defendants' statements. The Illinois state trial court judge and counsel agreed that the statements would be modified so that all references to Cade would be deleted from Cole's statement, and all references to Cole would be deleted from Cade's statement. According to Cole's petition for habeas corpus, the defense counsel and the prosecuting attorneys agreed that the defense counsel would not request a trial severance if the statements were redacted.[5]

At trial, the state called Sergeant Robert Thorne of the Chicago Police Department and asked him whether he had a conversation with Cole at the police station. Thorne answered, "At this time he said, 'I was there, I didn't have no gun and I didn't take no money.'" After this testimony, the following colloquy occurred:

"Q. [Prosecution] Did you hear Mr. Cade say anything at that time?

"A. [Thorne] Mr. Cade said he didn't have a gun and he didn't take any money.

"Q. Besides stating he didn't have a gun did Mr. Cade say anything else?

"A. He implicated—

"Q. One moment, please—

[Defense Counsel] Objection, Judge. Can we have a sidebar, please?

THE COURT: "Yes."

At the sidebar conference the defense counsel moved for a mistrial arguing that

Thorne's testimony was prejudicial because "[i]t was obvious to everyone in the courtroom when he said implicated it meant he was going to proceed to say he implicated the co-defendant as having the weapon...." The Illinois trial court judge denied the motion explaining, "the word implicate does not carry with it, and did not in this case, indicate what he was going to say next." To prevent further problems the prosecutor, the defense counsel, and the court agreed that the prosecutor could ask leading questions. The questioning then resumed:

"Q. Now, Sergeant Thorne, referring again to the conversation you heard from Mr. Cade, the defendant Cade, when he stated that he did not, as you testified, did not have a gun, did not take any money, did he state he was present at the time of the robbery?

"A. No, he did not state he was present at the time. Not the way you phrased the question, no, not in that sense.

"Q. Did he say he was there, in other words?

"A. He said Mr. DeBerry [Cole]—

"Q. No, without any reference to—"

At this point one of the defense counsel renewed his objection that the testimony violated the redaction agreement and implicated Cole, but the objection was overruled.

Cole, the only defense witness, testified that on January 20, 1979, he entered the apartment building at 227 North Kilbourn in Chicago, Illinois to purchase marijuana. He was unable to purchase marijuana, and, while leaving the building, observed several people in the hallway. According to Cole, he accompanied Cade to the West Lane Hotel, a nearby apartment house, in

---

**4.** A "redacted confession" is one which does not directly identify the co-defendant by name, age, sex, race, etc. *United States v. Madison,* 689 F.2d 1300, 1309 n. 1 (7th Cir.1982).

**5.** The agreement to redact was made during an off-the-record conference with counsel and the trial court. The record fails to disclose whether or not the defendants were asked either if they agreed with the redaction procedure or the deci-

sion not to request a trial severance. The record is likewise silent as to whether the defendants were informed either by their representative counsel or the court before or during the trial that their counsel may very likely have conflicting loyalties and thus an obvious conflict of interest when co-representing the two defendants.

hope of purchasing marijuana. When the police knocked on the door of the apartment in which Cole and Cade were attempting to purchase marijuana, Cole and Cade panicked and jumped from the apartment window to the snowbank below. When asked by his attorney whether he had taken anything from Brown, Cole denied participating in the armed robbery. During his cross-examination, Cole testified that Cade did not rob Brown. When questioned about his post-arrest statement accusing Cade of commiting the armed robbery, Cole denied telling the arresting officers that he was with Cade when Cade robbed Brown. The state in rebuttal recalled Officer Thorne who testified, "DeBerry [Cole] indicated to me he was there. That he didn't take any money. He didn't have any gun. Cade is the one that had the gun. And Cade is the one that took the money." Cade did not testify at the trial.

On the direct appeal[6] of their armed robbery convictions, Cole argued that Thorne's interrupted testimony during the case-in-chief violated the agreement to redact and informed the jury that Cade had accused him of committing the armed robbery. Cole also argued that, because the interrupted testimony informed the jury of Cade's accusation, he was denied his right of confrontation and his right to effective assistance of counsel because he was unable to question Cade about his post-arrest statement. The Illinois Court of Appeals, however, found that Thorne's statements did not establish that Cade had implicated Cole as the offender because the statements made were only interrupted half-sentences and thus failed to convey a complete thought; therefore, the State did not vio-

late its agreement to redact the post-arrest statement in which Cade implicated Cole. Since Thorne's interrupted testimony did not inform the jury that Cade had accused Cole of committing the armed robbery, Cole's rights to confrontation and to effective assistance of counsel were not denied.

In his petition for habeas corpus,[7] Cole renewed his argument that Thorne's interrupted testimony about Cade's statement created a constitutional error under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), by implicating him. Cole further argued that, "[o]nce a *Bruton* violation surfaced mid-trial ... Cole was denied his Sixth Amendment right to effective assistance of counsel." The district court held that, although "the timing of the testimony put it in a context such that it was clear that Thorne was testifying about post-arrest statements by Cole and Cade concerning the robbery, ... [the interrupted testimony] does not communicate a clear concept.... Thus, although Thorne's testimony implicates Cole in the sense of identifying him, it does not implicate Cole as the person who committed the armed robbery." The district court further noted that Thorne's testimony, "at most ... only incriminates Cole to the extent of placing Cole with Cade at the scene of the robbery." Since Cole admitted to being at the scene of the armed robbery, the district court held that Thorne's interrupted, truncated testimony did not incriminate Cole. The district court concluded that neither Cole's right to confrontation nor his right to effective assistance of counsel were violated as Cade's post-arrest

---

**6.** The Illinois Court of Appeals ordered a new trial for Cade holding that at the juncture of the trial when Thorne was called to rebut Cole's testimony and testified concerning Cole's statement implicating Cade, Cade's Sixth Amendment right to effective assistance of counsel was violated. The Illinois Court of Appeals reasoned that in this unusual situation where two attorneys co-represented both defendants, Cade could not exercise his constitutional right to confront Cole and question him about his post-arrest statement to Thorne because this examination necessarily would impeach Cole and thus

would have been a violation of the attorney's duty of loyalty to Cole. However, as our opinion more fully explains, Cole was not denied his rights to confrontation and to effective assistance of counsel because Thorne's interrupted statements during the case-in-chief did not inform the jury that Cade had accused Cole of committing the armed robbery in his post-arrest statement.

**7.** Cole's appeal to the Supreme Court of Illinois was denied.

accusation of Cole had not been communicated to the jury.

## II.

■ Our initial inquiry is whether the interrupted and fragmented statements of Sergeant Thorne during the presentation of the case-in-chief violated the *Bruton* rule by clearly conveying that Cade had implicated Cole in his post-arrest statement to the police. In *Bruton,* the Supreme Court held that the use of a non-testifying co-defendant's confession which inculpates a second defendant violates the second defendant's right to confrontation. *Bruton,* 391 U.S. at 126, 88 S.Ct. at 1622. When a co-defendant's extrajudicial statement, however, does not directly implicate the defendant, the *Bruton* rule does not come into play. *United States v. Belle,* 593 F.2d 487, 493 (3d Cir.1979).

■ Cole argues that Thorne's truncated statement did in fact implicate him. Initially, we point out that we disagree with Cole's argument that the jury could only conclude that Thorne referred to Cole when he said, "He implicated . . ." because the identity and actions of a third person on the street corner were issues in the trial; thus, the jury could just as easily have concluded that Thorne was referring to the third man rather than Cole. During his opening argument, the prosecutor told the jury that they would hear that there were three men on the corner, that two of the men would be identified for them, but that the State was unable to establish the identity of the third man. John Brown, Bequethal Brown, and Jeremiah Wilson all testified that they observed three men on the corner as they approached the apartment building on North Kilbourn. Bequethal Brown testified that after the third person followed her husband into the building, Cade and Cole then rushed into the building. During cross-examination, John Brown, responding to the defense counsel's question about the number of people in the hallway during the armed robbery, replied that there were only two holdup men in the hallway. On redirect Brown denied telling an investiga-

tor that he saw the defendants meet a third person after the robbery. During his closing argument the defense counsel attempted to cast doubt on Brown's credibility by pointing out that, although Brown testified that two men robbed him in the hallway, his wife's testimony in effect contradicted him when she stated that she had observed three men enter the building. During his rebuttal argument the prosecutor speculated that the third man may have been acting as a lookout. The implication that can be drawn from this testimony and argument is that three men participated in the robbery. Thus, Thorne's truncated and fragmented statement, "He implicated . . ." did not *necessarily* implicate Cole but could very well have implicated the third man. Furthermore, the statement did not in any way identify Cole "by name, weight, height, facial features, color, . . . gait, hair or any other manner." *United States v. Madison,* 689 F.2d 1300, 1309 (7th Cir.1982). Therefore, we agree with the trial court, the Illinois Court of Appeals, and the district court and hold this partial and fragmented statement fails to satisfy the elementary requirement in demonstrating a *Bruton* violation because it fails to name, much less identify, the co-defendant, Cole. In addition, the trial court, the Illinois Court of Appeals and the district court all found that, "He implicated . . ." does not communicate, as Cole's counsel argued to the trial court, that Cade said Cole was the one who had the gun. We agree. Since this statement fails to name or strategically incriminate much less implicate, or in the vernacular, "point an accusing finger" at Cole, we hold that no *Bruton* violation occurred.

The second statement, "He said Mr. DeBerry [Cole] . . .", was made in response to the question, "Did he [Cade] say he [Cade] was there, in other words?" Obviously, this testimony did not convey that Cade had implicated Cole in his post-arrest statement to the police because it merely identified Cole in response to a question without conveying a complete thought. Furthermore, even if we were to accept Cole's argument and agree that the truncated

statement implied that Cade said Cole was present in the hallway, the statement does not in fact present any new information because the jury had already heard Thorne testify that Cole admitted being in the hallway. Thus, the statement does not violate the *Bruton* rule because it does not inculpate Cole; rather, it is at best cumulative as it simply repeats the previous admission made by Cole that he was in fact present in the hallway at the time of the armed robbery.

### III.

The petitioner next advances two ineffective assistance of counsel arguments. Both arguments are founded on the fact that the two public defenders co-represented each of the defendants.[8] The Illinois Court of Appeals found, and the record is replete with evidence supporting the finding, that Cole and Cade were jointly represented by the same two counsel.[9] *See, People v. Cade,* 97 Ill.App.3d 354, 355, 52 Ill.Dec. 793, 794, 422 N.E.2d 1002, 1003 (1981). A state court's finding is entitled to a presumption of correctness, *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), and the respondent does not contest the fact that the two public defenders inexplicably co-represented both defendants.

"Requiring or permitting a single attorney to represent codefendants, often referred to as joint representation, is not *per se* violative of constitutional guarantees of effective assistance of counsel." *Holloway v. Arkansas,* 435 U.S. 475, 482, 98 S.Ct. 1173, 1177, 55 L.Ed.2d 426 (1978). When a counsel appointed to represent codefendants in a joint trial makes a timely motion before trial for the appointment of separate counsel to represent the defendants because of a possible conflict of interest, the trial court must either appoint separate counsel or take adequate steps to ascertain whether the risk of a conflict of interest was too remote to warrant separate counsel. *Id.* at 484–86, 98 S.Ct. at 1178–80. A defendant who raised no objection to the joint representation at trial "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). The Sixth Amendment does not require:

> "state courts ... to initiate inquiries into the propriety of multiple representation in every case. Defense counsel have an ethical obligation to avoid conflicting rep-

---

**8.** In his reply brief, Cole attempts to bolster his position by arguing that the entire public defender's staff is considered one single entity. Cole overlooks *People v. Spicer,* 79 Ill.2d 173, 37 Ill.Dec. 279, 402 N.E.2d 169 (1979) in which the Illinois Supreme Court held "a public defender's office is not an entity sufficiently similar to a law firm to invoke a *per se* conflict of interest rule whenever two or more assistant public defenders separately represent alleged coperpetrators of an offense." *Id.* 37 Ill.Dec. at 280, 402 N.E.2d at 176.

**9.** Attorney Petrone gave an opening statement for both defendants and Attorney Egan gave a closing statement for both defendants. Attorney Petrone cross-examined three prosecution witnesses and Attorney Egan cross-examined two other prosecution witnesses. Attorney Petrone conducted the recross-examination of one of the prosecution witnesses that Attorney Egan had cross-examined. Attorney Petrone conducted the direct examination of the only defense witness, Cole. Furthermore, Attorney Egan represented both defendants at a pre-trial confer-

ence, at a post-trial hearing on a motion for a new trial, and at the sentencing hearing. Attorney Petrone represented both defendants at a conference on jury instructions.

We find the office of the public defenders' failure to assign separate counsel for each defendant or, a more professionally acceptable alternative, to hire outside counsel to represent one of the defendants a highly questionable and unusual practice. In *Cuyler v. Sullivan,* 446 U.S. 335, 346 n. 11, 100 S.Ct. 1708, 1717 n. 11, 64 L.Ed.2d 333 (1980), the Supreme Court noted that "seventy percent of the public defender offices responding to a survey reported a strong policy against undertaking multiple representation in criminal cases. Forty-nine percent of the offices responding never undertake such representation." It is the opinion of this court that the public defenders' failure to separately defend each defendant is a questionable practice and is fraught with such serious ethical and constitutional problems that this court will not hesitate in the future to refer these matters to the proper authority should we deem it necessary.

resentations and to advise the court promptly when a conflict of interest arises during the course of trial.[10] Absent special circumstances, therefore, trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist. Indeed, as the court noted in *Holloway, supra,* at 485–486, 98 S.Ct. at 1179, trial courts necessarily rely in large measure upon the good faith and good judgment of defense counsel. An attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial. Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry."

*Cuyler,* 446 U.S. at 346–47, 100 S.Ct. at 1717–18 (citations omitted).

The danger of a conflict of interest is so severe when one lawyer represents two criminal defendants that the American Bar Association has recommended that such dual representation be undertaken only in the extraordinary case:

"The potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of several co-defendants except in unusual situations when, after careful investigation, it is clear that no conflict is likely to devel-

op and when the several defendants give an informed consent to such multiple representation. A.B.A. Standards: The Defense Function § 3.5(b) (1971).[11]

Cole renews the same argument he made before the Illinois Court of Appeals and in the district court that Thorne's truncated statements conveyed the information that Cade had implicated Cole in his post-arrest statement. Cole reasons that, after Thorne allegedly testified that Cade had accused Cole of committing the robbery, he was denied effective assistance of counsel at that point because his attorney was unable to exercise Cole's right to confront and impeach Cade without also violating the attorney's duty of loyalty to Cade. In his appeal to this court, Cole argues for the first time that he and Cade had diametrically conflicting defenses. According to Cole, because the defendants had conflicting defenses, joint representation of them at trial created an undeniable conflict of interest for their counsel denying Cole his Sixth Amendment right to effective assistance of counsel. After reviewing the record, we do not hesitate to hold that Cole's first argument is without merit; since the interrupted testimony failed to inform the jury that Cade had implicated Cole in his post-arrest statement, Cole's lawyers were not put in the situation of having to cross-examine Cade about his statement implicating Cole.

We turn now to Cole's claim that the joint representation of the defendants by the public defenders created an

---

**10.** ABA Code of Professional Responsibility, DR5–105, EC 5–15 (1976); ABA Project on Standards for Criminal Justice, Defense Function § 3.5(b) (App.Draft 1971).

**11.** The commentary to § 3.5(b) explains that the following dangers arise from multiple-client representation:

"In many instances a given course of action may be advantageous to one of the defendants but not necessarily to the other. The prosecutor may be inclined to accept a guilty plea from one of the co-defendants, either to a lesser offense or with a lesser penalty or other considerations; but this might harm the interests of the other defendant. The contrast in the dispositions of their cases may have a harmful impact on the remaining defendant;

the one who pleads guilty might even, as part of the plea agreement, consent to testify against the co-defendant. Moreover, the very fact of multiple representation makes it impossible to assure the accused that his statements to the lawyer are given in full confidence. Defense counsel necessarily must confront each with any conflicting statements made by the other in the course of planning the defense of the cases. In this situation he may find that he must 'judge' his clients to determine which is telling the truth, and his role as advocate would inevitably be undermined as to one if not both defendants." A.B.A. Standards: The Defense Function § 3.5(b) at 213–214 (1971).

undeniable conflict because Cole and Cade had diametrically conflicting defenses. Cole did not argue to either the state or district courts that the joint representation was impermissible because of the conflicting defenses. The respondent argues that Cole waived his argument that the joint representation was impermissible because of the conflicting defenses. A claim has not been waived if it was fairly presented to the state court. *United States ex rel. Sullivan v. Fairman*, 731 F.2d 450, 453 (7th Cir.1984). In determining whether a petitioner's habeas corpus claim had been fairly presented to the state court, the test is "whether any of petitioner's claims is so clearly distinct from the claims he has already presented to the state courts that it may fairly be said that the state courts have had no opportunity to pass on the claim." *Humphrey v. Cady*, 405 U.S. 504, 517 n. 18, 92 S.Ct. 1048, 1056 n. 18, 31 L.Ed.2d 394 (1972). Where the argument to the state court does not:

"(a) rely on pertinent federal cases employing constitutional analysis; (b) rely on the state cases employing constitutional analysis in like fact situations; (c) assert the claim in terms so particular as to call to mind a specific right protected by the Constitution; or (d) allege a pattern of facts that is well within the mainstream of .constitutional litigation, we cannot say that the state court has considered or had a fair opportunity to consider and correct the subsequently alleged constitutional violations."

*United States ex rel. Sullivan v. Fairman*, 731 F.2d 450, 454 (7th Cir.1984). Similarly, "it is a well-established general proposition that 'a litigant cannot present to [the Circuit Court of Appeals] as a ground for reversal an issue which was not presented to the trial court and which it, therefore, had no opportunity to decide.'" *Holleman v. Duckworth*, 700 F.2d 391, 394–95 (7th Cir.1983) (*quoting Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1333 (7th Cir.1977)).

■ In *Holleman*, the petitioner argued to the state and district courts that his confessions were the fruit of an earlier statement that had been prompted by his heroin withdrawal symptoms. In this court, Holleman shifted his position and argued that the confession was the product of his heroin withdrawal symptoms rather than the fruit of the earlier statement. Holleman contended that, although he did not expressly argue to the district court that his confession was the product of his heroin withdrawal symptoms, it was sufficient that he challenged the admission of the statements. Our court held, "That Holleman challenged the admission of the confessions in his habeas petition does not entitle him to raise any and all theories and facts in support of this on appeal." *Holleman*, 700 F.2d at 395 n. 2. Similarly, in the present case, although Cole raised an ineffective assistance of counsel argument in the state and district courts, he objected only to the issues dealing with Thorne's truncated testimony and directed the court's attention specifically to the question of whether the interrupted statement informed the jury that Cade had accused Cole of committing the robbery, a *Bruton* violation. Once the courts determined that there was no *Bruton* violation because the interrupted and fragmented testimony did not inform the jury that Cade had accused Cole of committing the robbery, their inquiry ended. Cole failed to present any evidence to either the state or district courts demonstrating that he would have pursued his defense of accusing Cade of committing the armed robbery if he had not been represented by the same attorney that represented Cade. Furthermore, except for his bald, unsupported allegation in the habeas petition, there is no evidence in the record that trial counsel really agreed not to move to sever in exchange for the agreement to redact. We hold that the claim that Cole was denied effective assistance to counsel because counsel represented defendants with antagonistic defenses was waived because neither the Illinois Court of Appeals nor the district court were presented with the legal arguments and facts on which the claim was based and

thus were denied the opportunity to investigate and to rule on the claim.

Even if we were to reach the merits of Cole's claim that he was denied effective assistance of counsel because the public defenders jointly represented defendants with antagonistic defenses, we would deny Cole's claim because the record clearly demonstrates that Cole made a tactical decision to abandon his defense of accusing Cade thus removing the conflict of interest between the two defendants. Cole's decision to abandon his defense of accusing Cade is not an unusual choice for a criminal defendant to make. As Justice Frankfurter recognized, "Joint representation is a means of insuring against reciprocal recrimination. A common defense often gives strength against a common attack." *Glasser v. United States*, 315 U.S. 60, 92, 62 S.Ct. 457, 474, 86 L.Ed. 680 (1942) (Frankfurter, J., dissenting) (*quoted in Holloway v. Arkansas*, 435 U.S. at 482, 483–84, 98 S.Ct. at 1177, 1178–79 (1978)). Because he did not object to the joint representation at trial, Cole must show: (1) he and Cade were jointly represented by the public defenders; (2) there was an actual conflict of interest between the co-defendants; and (3) the alleged conflict of interests affected the adequacy of legal representation afforded the defendants. *Dentley v. Lane*, 665 F.2d 113, 116 (7th Cir. 1981). Cole's argument that there was an actual conflict of interest between him and Cade because of their diametrically conflicting defenses is based on the premise that, if he had not been represented by the same attorneys that represented Cade, he would have pursued his defense of accusing Cade of committing the armed robbery. Examination of the record reveals that the defendants did not move to sever the trial but, to the contrary, entered into an agreement with the prosecution to redact their mutual accusations from their post-arrest statements to the police. At trial, the defendants attacked the credibility of the prosecution witnesses and, through Cole's testimony, explained why they were in the area when the armed robbery occurred. Significantly, when asked about his post-arrest statement accusing Cade of committing the armed robbery, Cole denied telling the arresting officers that he was with Cade when Cade robbed Brown. In contrast, in all of the cases where we have found an actual conflict of interest between codefendants who were jointly represented by the same defense counsel, the defendants did not abandon their defenses. In *Dentley v. Lane*, 665 F.2d 113 (7th Cir. 1981), the defendant attempted to attack the reliability of a line-up which his co-defendant wanted to bolster. In *United States ex rel. Williams v. Franzen*, 687 F.2d 944 (7th Cir.1982), the defendant took the stand and gave testimony implicating his co-defendants. To the contrary, in this case when Cole was presented with an opportunity to accuse Cade of committing the armed robbery, Cole denied under oath telling the arresting officers that Cade had committed the crime. It is logical to assume from the record in this case, rather than demonstrating an actual conflict of interest, that in all probability the defendants agreed prior to trial upon a trial strategy of neither defendant testifying against the other. Because there is no evidence in the record that Cole ever pursued the defense of accusing Cade of committing the armed robbery and, to the contrary, disclaimed the defense under oath, we hold that Cole abandoned the defense of accusing Cade. Decisions to pursue or abandon defenses are tactical choices of trial strategy. A reviewing court may only consider those acts or omissions of an attorney that are not classifiable as an attorney's tactics. *Arrowood v. Clusen*, 732 F.2d 1364, 1369 (7th Cir.1984). We will not grant a defendant a new trial because his first defense strategy failed. Since the decision to abandon the defense of accusing Cade was an obvious strategical and tactical decision, it may not be reviewed by this court on appeal.

The decision of the district court is AFFIRMED.